Argued and submitted September 8, decision of the Tax Court reversed in part and affirmed in part, and case remanded to the Tax Court for further proceedings December 16, 2004

## U.S. BANCORP
and Subsidiaries,
*Respondent,*

*v.*

## DEPARTMENT OF REVENUE,
*Appellant.*

(OTC 4531; SC S51013)

103 P3d 85

Carl N. Byers, Senior Judge (summary judgment); Henry C. Breithaupt, Judge (trial).

Jas. Jeffrey Adams, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Robert B. Rocklin, Assistant Attorney General.

Bruce L. Campbell, of Miller Nash LLP, Portland, argued the cause for respondent. With him on the briefs was Ryan R. Nisle.

CARSON, C. J.

**CARSON, C. J.**

This dispute concerns the Oregon corporate excise tax liability of U.S. Bancorp (taxpayer) for tax years 1988 through 1992.[1] The primary question before us is whether, during the tax years at issue, the Department of Revenue (department) had authority to require taxpayer to depart from the rule prescribing the standard apportionment formula for financial organizations governed under ORS 314.280,[2] because that formula failed to provide an accurate reflection of taxpayer's net income from business done within Oregon.

The department assessed additional taxes against taxpayer for tax years 1988 through 1992 based upon its determination that inclusion of taxpayer's intangible personal property resulted in a more accurate apportionment of taxpayer's income to Oregon under ORS 314.280. Taxpayer appealed from those notices of deficiency to the Oregon Tax Court.

In the Tax Court, taxpayer first argued that ORS 314.280, and the rules that the department had promulgated pursuant to that statute, precluded the department from including taxpayer's intangible personal property in the apportionment computations for the tax years at issue. As relevant here, taxpayer also argued that the department's notices of deficiency for tax years 1988 and 1989 were time-barred because, according to taxpayer, the department had received notice of corrections to taxpayer's federal tax liability more than two years before the department had entered

---

[1] The parties have engaged in extensive litigation relating to taxpayer's Oregon corporate excise tax liability for the tax years 1984 through 1992. *See, e.g., U.S. Bancorp v. Dept. of Rev.*, 15 OTR 13 (1999); *US Bancorp v. Dept. of Rev.*, 13 OTR 84 (1994). This appeal concerns only a part of that litigation relating to tax years 1988 through 1992. Our discussion of the factual and procedural history of this case is limited to the history that is relevant to the issues before us.

[2] The legislature adopted the version of ORS 314.280 in effect during the relevant tax years in 1965. Or Laws 1965, ch 152, § 22. The text of that statute is set out at 337 Or at 629-30. The legislature did not amend ORS 314.280 again until 2001. Or Laws 2001, ch 933, § 1. Neither party contends, nor do we conclude, that the 2001 version of ORS 314.280 governs this dispute. Thus, unless noted otherwise, all references to ORS 314.280 in this opinion refer to the 1965 version of that statute.

into an agreement with taxpayer that had extended the limitations period for those years. *See* ORS 314.410(3) (providing two-year period of limitations from notice of federal correction for department to issue notice of deficiency); ORS 314.410(6) (providing that parties may enter extension agreement before expiration of any period of time prescribed for giving of notice of deficiency); *see also generally* ORS 314.410(1) (providing that department generally has three years after return is filed to issue notice of deficiency). The department answered and filed a counterclaim, asserting an additional deficiency relating to the receipts factor of the apportionment formula.

On taxpayer's motion for partial summary judgment, the Tax Court concluded that the department lacked authority to include taxpayer's intangible personal property in the apportionment formula for tax years 1988 through 1992. *U.S. Bancorp v. Dept. of Rev.*, 15 OTR 375 (2001). The case proceeded to trial on taxpayer's statute of limitations claim and the department's counterclaim. At trial, taxpayer conceded the department's counterclaim except as to its timeliness. As to taxpayer's statute of limitations claim, the Tax Court held that taxpayer bore the burden of proving that the parties' extension agreement was defective because the department had received notice of corrections to taxpayer's federal tax liability more than two years before the parties had executed that agreement. Because taxpayer had failed to prove that fact, the Tax Court concluded that the extension agreement was valid and, consequently, that the department's notices of deficiency for 1988 and 1989 were timely.

The department appealed to this court, assigning error to the Tax Court's grant of taxpayer's motion for partial summary judgment. In a cross-assignment of error, taxpayer contends that the Tax Court erred by ruling that, as to taxpayer's statute of limitations claim, taxpayer bore the burden of proving when the department first received notice of corrections to taxpayer's federal tax liability for 1988 and 1989.

We review for errors of law, ORS 305.445, and discuss both the department's assignment of error and taxpayer's cross-assignment of error separately below. For the reasons that follow, we conclude that the Tax Court erred by

holding that the department had lacked authority to include taxpayer's intangible personal property in the apportionment formula used to allocate taxpayer's income to Oregon under ORS 314.280 for tax years 1988 through 1992. We further conclude that the Tax Court correctly determined that taxpayer bore the burden of proving that the parties' extension agreement was defective because the department had received notice of corrections to taxpayer's federal tax liability more than two years before the parties had executed that agreement. Based upon those conclusions, we reverse the decision of the Tax Court in part and affirm it in part, and remand the case to that court for further proceedings.

## DEPARTMENT'S ASSIGNMENT OF ERROR

To provide context for the facts and the parties' arguments respecting the department's authority to require taxpayer to utilize an alternative apportionment formula, we first provide background as to the statutory and regulatory framework that underlies this dispute. Taxpayer is a unitary financial organization that does business both in Oregon and in other states. *See* ORS 314.610(4) (defining "financial organization" for purposes of ORS 314.605 to 314.675). As a financial organization, it is excluded from the coverage of the Uniform Division of Income for Tax Purposes Act (UDITPA),[3] and, instead, its net income for purposes of the Oregon corporate excise tax is determined under ORS 314.280. *See* ORS 314.615 (excluding financial organizations with taxable income from both within and outside Oregon from UDITPA). During 1988 through 1992, the tax years at issue in this dispute, ORS 314.280 provided, in part:

"(1) If a taxpayer has income from business activity as a financial organization * * * which is taxable both within and without this state * * * the determination of net income shall be based upon the business activity within the state, and the department shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations

---

[3] UDITPA, ORS 314.605 to 314.675, is a uniform statute that the legislature adopted in 1965. Or Laws 1965, ch 152, §§ 20, 21. For a discussion of the goals of UDITPA, see generally *Twentieth Century-Fox Film v. Dept. of Rev.*, 299 Or 220, 226-28, 700 P2d 1035 (1985).

adopted by the department, so as fairly and accurately to reflect the net income of the business done within the state.

"(2) The provisions of subsection (1) of this section dealing with the apportionment of income earned from sources both within and without the State of Oregon are designed to allocate to the State of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. Any taxpayer may submit an alternative basis of apportionment with respect to the income of the taxpayer and explain that basis in full in the return of the taxpayer. If approved by the department that method will be accepted as the basis of allocation."

Pursuant to the authority that ORS 314.280 confers upon it, the department has adopted administrative rules governing methods of income reporting for taxpayers governed under that statute. For the tax years at issue, as is also true now, many of the department's rules promulgated under ORS 314.280 incorporated provisions of UDITPA or rules that the department had adopted to implement UDITPA. As pertinent here, OAR 150-314.280-(C) adopts by reference the UDITPA requirement that a taxpayer utilize the apportionment method of income allocation when the taxpayer's business activities in Oregon are part of a unitary business that is carried on both within and outside the state. OAR 150-314.280-(C) (incorporating OAR 150-314.615-(D)); OAR 150-314.615-(D) (requiring apportionment method in such circumstances). During the relevant tax years, the department also required financial organizations to apply a modified version of the UDITPA three-factor apportionment formula. *See generally Twentieth Century-Fox v. Dept. of Rev.*, 299 Or 220, 224, 700 P2d 1035 (1985) (describing operation of UDITPA three-factor apportionment formula). OAR 150-314.280-(E) (1987) provided, in part:

"After deducting the nonapportionable income, the remainder shall *ordinarily* be apportioned to this state by giving equal weight to three factors.

"For a financial organization, the three factors shall be payroll, property and gross revenue.

*" 'Property' means real and tangible personal property used in the business."*[4]

(Emphasis added.) *See also* OAR 150-314.280-(F) (1987) (incorporating UDITPA methodology for determining "property factor" set out in ORS 314.655 and its related rules).

In addition to those provisions, during the relevant tax years, the department also imported restrictions from UDITPA that narrowly limited the department's authority to permit or require a taxpayer to deviate from standard methods of income reporting that the department had prescribed by rule under ORS 314.280. Under the rule adopting those limits, the department possessed authority to permit or require a taxpayer to utilize an alternative income reporting method only if the applicable standard method did not represent fairly the taxpayer's "business activity" in Oregon and resulted in a violation of the taxpayer's state or federal constitutional rights. Specifically, OAR 150-314.280-(M) (1987) provided, in part:

> *"If the allocation and apportionment provisions of OAR 150-314.280-(A) to 150-314.280-(L) do not fairly represent the extent of the taxpayer's business activity in this state and result in the violation of the taxpayer's rights under the Constitution of this state or of the United States,* the taxpayer may petition for and the department may permit, or the department may require, in respect to all or any part of the taxpayer's business activity:
>
> "(1)   Separate accounting;
>
> "(2)   The exclusion of any one or more of the factors;
>
> "(3)   The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

---

[4] The department amended OAR 150-314.280-(E) in 1990 to add paragraph numbering, but otherwise did not alter the text of that rule during the tax years at issue. In 1993, the department amended OAR 150-314.280-(E) to provide that financial organizations must apply the apportionment formula set out in OAR 150-314.280-(N). Both parties, however, recognize that OAR 150-314.280-(N) is inapplicable to this dispute because that rule expressly provides that it applies to only tax years beginning on or after January 1, 1993. *See* OAR 150-314.280-(N)(1) (so providing).

"(4)  The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income."

(Emphasis added.) *See also* ORS 314.670 (1987) (similarly restricting variation from standard apportionment provisions of UDITPA).

In 1995, this court issued its decision in *Fisher Broadcasting, Inc. v. Dept. of Rev.*, 321 Or 341, 898 P2d 1333 (1995). In that case, the taxpayer had challenged the validity of OAR 150-314.280-(I) (1983)[5]—the predecessor rule to OAR 150-314.280-(M) (1987)—which similarly incorporated restrictions from UDITPA limiting the department's authority to permit or require deviation from the department's rules prescribing standard methods of income reporting under

---

[5] OAR 150-314.280-(I) was renumbered to OAR 150-314.280-(M) in 1987. OAR 150-314.280-(I) (1983) provided:

"The provisions of OAR 150-314.670-(A) are by this reference incorporated herein and made a part of this OAR 150-314.280-(I)."

OAR 150-314.670-(A) (1983), promulgated under the authority of UDITPA, provided, in part:

"*ORS 314.670 provides that if the allocation and apportionment provisions of ORS 314.610 to 314.655 do not fairly represent the extent of the taxpayer's business activity in this state*, the taxpayer may petition for, or the Department may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

"(1)  Separate accounting;

"(2)  The exclusion of any one or more of the factors;

"(3)  The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

"(4)  The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

"ORS 314.670 permits a departure from the allocation and apportionment provisions of [UDITPA] only in limited and specific cases. ORS 314.670 may be invoked only where unusual fact situations (which ordinarily will be unique and nonrecurring) produce incongruous results under the apportionment and allocation provisions contained in [the UDITPA statutes]."

(Emphasis added.)

In 1984, the legislature amended ORS 314.670 to further restrict deviation from standard methods of income reporting under UDITPA by allowing alternative methods only when the presumptive methods would "result in the violation of the taxpayer's rights under the Constitution of this state or of the United States[.]" Or Laws 1984, ch 1, § 17. In 1999, the legislature removed that additional criterion from ORS 314.670. *See* Or Laws 1999, ch 143, § 9 (eliminating requirement that constitutional violation be established before alternative reporting methods may be utilized under UDITPA).

ORS 314.280. After reviewing the text and context of ORS 314.280, this court agreed with the taxpayer that the restriction against alternative reporting methods set out in OAR 150-314.280-(I) (1983) was beyond the scope of the department's rulemaking authority under ORS 314.280. In reaching that conclusion, the court first observed that the legislature expressly had excluded certain taxpayers from the coverage of UDITPA and, in doing so, had demonstrated an intent to preserve for those taxpayers "the advantages of individual judgment and flexibility" that had existed under ORS 314.280. *Id.* at 353-55. Because the department lacked authority to override that legislative choice, the court concluded that the department was not authorized to subject taxpayers covered under ORS 314.280 to the same restrictions against utilizing alternative methods of income reporting that existed for taxpayers governed by UDITPA. *Id.* at 355.

The court went on to observe that, even if the department had been authorized to limit its power in such a way, the UDITPA standard incorporated under OAR 150-314.280-(I) (1983) was incompatible with the text of ORS 314.280. Specifically, the court pointed out that, although ORS 314.280 directs the department to adopt reporting methods that " *'fairly and accurately* reflect the *net income* of the [taxpayer's] business done within the state[,]' " the UDITPA standard incorporated under OAR 150-314.280-(I) (1983) authorized the department to permit or require alternative reporting methods only when the standard method did not " *'fairly* represent the extent of the taxpayer's *business activity* in this state.' " *Id.* at 355 (quoting ORS 314.280 and OAR 150-314.670 (1987)) (emphasis in *Fisher Broadcasting*). Thus, the court determined that OAR 150-314.280-(I) (1983) also was invalid because, contrary to the legislative mandate of ORS 314.280, that rule did not allow a taxpayer to challenge the application of a standard income reporting method upon the ground that it did not result in an accurate reflection of the taxpayer's net income from business done within the state. *Id.* at 359.

In 1995, in response to this court's decision in *Fisher Broadcasting*, the department amended the rule governing

its authority to permit or require deviation from the department's rules prescribing methods of income reporting under ORS 314.280. The department's new rule provided that the department had authority to permit or require an alternative reporting method—including the use of an additional factor in an apportionment formula—whenever a standard method did not "fairly and accurately" reflect the taxpayer's net income from business done within Oregon. OAR 150-314.280-(M) (1995) provided, in part:

> "(1) For taxpayers that are taxable both within and without Oregon, the provisions of ORS 314.280 will ordinarily require apportionment to arrive at a fair and accurate measure of net income from business activity in Oregon. If the taxpayer can show that no unitary relationship exists between its business activities within Oregon and those activities outside Oregon, then taxpayer may use separate accounting.

> "(2) *If the allocation and apportionment provisions of OAR 150-314.280-(A) to 150-314.280-(N) do not fairly and accurately reflect the net income of the business done within Oregon, based on the taxpayer's business activity within Oregon,* the department may require or the taxpayer may request an alternative method of apportionment and the department may approve that method of apportioning all or any part of the net income from the taxpayer's business activity within Oregon:

> "* * * * *

> "(4) Examples of alternative methods of apportionment include:

> "(a) The exclusion of any one or more of the factors;

> "(b) *The inclusion of one or more additional factors which will fairly and accurately reflect the taxpayer's net income from business activity in Oregon*; or

> "(c) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income."

(Emphasis added.)

With that background in mind, we turn to the facts of this case. Taxpayer filed its Oregon corporate excise tax

returns for the years 1988 through 1992 by applying the standard three-factor apportionment formula that the department had prescribed for financial organizations at that time. *See* 337 Or at 630-31 (setting out OAR 150-314.280-(E) (1987)). Consistently with the definition of the "property" factor of that formula, taxpayer did not include intangible personal property in its apportionment computations. *See* OAR 150-314.280-(E) (1987) (defining "property" factor as "real and tangible personal property used in the business").

In 1998, the department audited taxpayer's tax returns for the years at issue and determined that inclusion of taxpayer's intangible personal property in the apportionment formula resulted in a more accurate allocation of taxpayer's net income to Oregon. Applying the 1995 version of OAR 150-314.280-(M), set out above, the department included taxpayer's intangible personal property in the apportionment calculation, and, based upon that inclusion, it issued notices of deficiency against taxpayer for the five years at issue.

Taxpayer appealed from those notices of deficiency to the Oregon Tax Court. On taxpayer's motion for partial summary judgment, the Tax Court concluded that the department's rules precluded the department from including taxpayer's intangible personal property in the apportionment formula for the tax years at issue. *U.S. Bancorp*, 15 OTR at 379-80. The Tax Court also rejected the department's assertion that OAR 150-314.280-(M) (1995) applied to the disputed tax years, concluding that "that rule was not expressly made retroactive and therefore will not be applied by the court to the years in question." *Id.* at 380. Based upon those conclusions, the Tax Court granted summary judgment in favor of taxpayer and awarded taxpayer refunds for the years at issue.

As noted above, the department appealed the Tax Court's grant of taxpayer's summary judgment motion, asserting that the Tax Court erred in concluding that the department had lacked authority to include taxpayer's intangible personal property in the apportionment formula. Before

this court, the parties' arguments focus upon the applicability of OAR 150-314.280-(M) (1995) to the years in question. Both parties agree that, if OAR 150-314.280-(M) (1995) governs this dispute, then the department had authority under that rule to include taxpayer's intangible personal property in the apportionment calculation.[6] Taxpayer, however, argues that applying OAR 150-314.280-(M) (1995) to the tax years at issue would amount to a "retroactive" application of that rule, and, according to taxpayer, the department did not manifest an intent for such an application in promulgating OAR 150-314.280-(M) (1995).[7] Taxpayer further contends that, if this court were to construe OAR 150-314.280-(M) (1995) as applicable to the tax years at issue, then that application would violate taxpayer's substantive due process rights under the federal constitution. We address each of taxpayer's arguments in turn below.

■ We first consider whether applying OAR 150-314.280-(M) (1995) to tax years 1988 through 1992 properly is characterized as a "retroactive" application of that rule. The department contends that, because the tax years at issue were open to examination, the application of OAR 150-314.280-(M) (1995) to those years would not constitute a "retroactive" application of that rule. As we understand its argument, the department appears to suggest that the application of a later-promulgated rule cannot be characterized as a "retroactive" application of that rule if the department retains authority to assess deficiencies against a taxpayer. We disagree with that assertion.

This court previously has explained that, as a general matter, a retroactive legislative action is one that affects

---

[6] For purposes of its summary judgment motion, taxpayer does not dispute the department's averment that inclusion of taxpayer's intangible personal property results in a more accurate apportionment of its net income to Oregon.

[7] Before this court, taxpayer also argues that OAR 150-314.280-(M) (1995) is invalid because it exceeds the department's rulemaking authority under ORS 314.280. Before the Tax Court, however, taxpayer emphasized that it did not question the department's authority to promulgate OAR 150-314.280-(M) (1995), specifically asserting that "ORS 314.280(1) clearly gives the Department the authority to promulgate such a rule." As a result of that position in the Tax Court, we decline to exercise our discretion to address taxpayer's challenge to the department's authority to promulgate OAR 150.314.280-(M) (1995). *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 658-60, 20 P3d 180 (2001) (discussing "right for the wrong reason" doctrine).

existing legal rights or obligations arising out of past transactions or occurrences. *Fromme v. Fred Meyer, Inc.*, 306 Or 558, 561-62, 761 P2d 515 (1988); *see also Whipple v. Houser*, 291 Or 475, 488-89, 632 P2d 782 (1981) (Linde, J., concurring) (" 'Retroactivity' itself is a deceptively simple word for a complex set of problems. In real time, all laws can operate only prospectively, prescribing legal consequences after their enactment; they cannot change the past. On the other hand, all new laws operate upon a state of affairs formed to some extent by past events."). In this case, OAR 150-314.280-(M) (1995) did nothing to alter taxpayer's existing obligation under ORS 314.280 to allocate its net income to Oregon based upon business done within this state. Nevertheless, in light of the restriction set out in OAR 150-314.280-(M) (1987), we agree with taxpayer that it was entitled to presume that its maximum tax liability for the years at issue would be based upon the three-factor apportionment formula set out in OAR 150-314.280-(E) (1987). Because, under the circumstances here, OAR 150-314.280-(M) (1995) would authorize the department to increase that liability based upon the inclusion of an additional apportionment factor, we conclude that the application of that rule to taxpayer for the years at issue would impose new obligations with respect to past transactions and, therefore, properly is characterized as a "retroactive" application of that rule.

That conclusion, however, does not end our inquiry. As this court repeatedly has observed, retroactive application of a rule is not necessarily impermissible. *See Delehant v. Board on Police Standards*, 317 Or 273, 278, 855 P2d 1088 (1993) (so stating). Rather, in deciding whether to apply a rule retroactively, we must discern the intent of the promulgating agency. *Id.*; *cf. Whipple*, 291 Or at 480 ("[I]n determining whether to give retroactive effect to a legislative provision, it is not the proper function of this court to make its own policy judgments, but its duty instead is to attempt to 'discern and declare' the intent of the legislature."). To do so, we first consider the text and context of the rule at issue. *See generally Abu-Adas v. Employment Dept.*, 325 Or 480, 485, 940 P2d 1219 (1997) (in interpreting administrative rule, court first considers text and context of rule to discern intent of enacting body).

The text of OAR 150-314.280-(M) (1995) is silent as to whether the department intended that rule to apply retrospectively or, instead, to only tax years subsequent to its enactment. As we explain below, however, the context of that rule makes clear that the department intended OAR 150-314.280-(M) (1995) to operate retrospectively.

We first observe that the circumstances surrounding the promulgation of OAR 150-314.280-(M) (1995) suggest that the department intended that rule to apply retrospectively. As discussed previously, the department adopted OAR 150-314.280-(M) (1995) in direct response to this court's decision in *Fisher Broadcasting*. It is of no consequence whether taxpayer is correct in insisting that OAR 150-314.280-(M) (1995) provides the department with greater flexibility than the decision in *Fisher Broadcasting* mandates. Rather, the circumstances surrounding the department's promulgation of OAR 150-314.280-(M) (1995) offer insight into the department's intent, because those circumstances illustrate that the department adopted that rule in response to a judicial decision that, by declaring its previous rule defective, had left in a gap in the department's existing regulatory framework under ORS 314.280.

We do not suggest that those circumstances, without more, establish that the department intended OAR 150-314.280-(M) (1995) to operate retrospectively. However, in this case, other rules in existence at the time that the department promulgated OAR 150-314.280-(M) (1995) confirm that view. As the department points out, OAR 150-305.100-(B) provides that "[a]dministrative rules adopted by the department, unless specified otherwise by statute or by rule, shall be applicable to all periods open to examination." Thus, at the time that it adopted OAR 150-314.280-(M) (1995), the department had expressed its intent to apply *all* tax regulations to all periods open to examination unless a particular statute or rule provides a contrary instruction. Because OAR 150-314.280-(M) (1995) does not do so, OAR 150-305.100-(B) directs us to apply that rule to the tax years in question.

Taxpayer seeks to avoid that result by arguing that OAR 150-305.100-(B) cannot inform our determination of the department's intent in promulgating OAR 150-314.280-(M)

(1995) for two reasons. First, taxpayer asserts that the department intended OAR 150-305.100-(B) to apply to only new rules, rather than also to amendments to existing rules. Taxpayer, however, cites no authority to support that proposition, and we do not perceive such a distinction in the wording of OAR 150-305.100-(B).

Taxpayer also argues that, because the department promulgated OAR 150-305.100-(B) nine years before it promulgated OAR 150-314.280-(M) (1995), it "seems to defy logic" that OAR 150-305.100-(B) is relevant to determining the department's intent respecting the retrospective application of that later-promulgated rule. We again disagree and, indeed, consider OAR 150-305.100-(B) relevant precisely because it provided a presumption of retroactive application to all periods open to examination at that time when the department promulgated OAR 150-314.280-(M) (1995). With such a presumption in place under the existing regulatory framework, the department had no need to express an intent respecting the retroactive operation of OAR 150-314.280-(M) (1995) unless it intended that rule to operate differently. Thus, we must infer from the lack of an instruction to the contrary that the department intended OAR 150-314.280-(M) (1995) to conform to the presumption set out in OAR 150-305.100-(B) and to apply to all periods open to examination.

■ In anticipation of that conclusion, taxpayer next argues that, even if the department intended OAR 150-314.280-(M) (1995) to operate retrospectively, that rule cannot apply to the tax years in question because such an application would violate taxpayer's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[8] To support that proposition, taxpayer relies upon the United States Supreme Court decision in *United States v. Carlton*, 512 US 26, 114 S Ct 2018, 129 L Ed 2d 22 (1994). In that case, the taxpayer had made a securities transaction to take advantage of an estate tax deduction that

---

[8] The Fourteenth Amendment provides, in part:

"No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property, without due process of law * * *.*"

(Emphasis added.)

existed under the Internal Revenue Code at that time. Almost a year later, Congress amended the tax code to eliminate that deduction retrospectively and, as a result of that amendment, the taxpayer no longer qualified for the deduction. *Id.* at 28-30.

Before the Supreme Court, the taxpayer challenged the validity of the retroactive tax legislation upon substantive due process grounds. In considering the taxpayer's challenge, the Supreme Court clarified that retroactive economic legislation, including retroactive tax legislation, satisfies due process requirements so long as "the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means[.]" *Id.* at 30-31 (quoting *Pension Benefit Guaranty Corporation v. R. A. Gray & Co.*, 467 US 717, 729-30, 104 S Ct 2709, 81 L Ed 2d 601 (1984)) (internal quotation marks omitted). Applying that standard, the Court upheld the retroactive legislation against the taxpayer's due process challenge. In explaining that conclusion, the Court relied upon the facts that Congress had acted to cure a mistake in the original legislation and that "Congress had acted promptly and established only a modest period of retroactivity." *Carlton*, 512 US at 32-33.

In this case, we do not understand taxpayer to argue that the department's rule was enacted for an illegitimate purpose. Rather, as we understand taxpayer's challenge, taxpayer contends that application of OAR 150-314.280-(M) (1995) to the tax years in question would exceed the scope of permissible retroactivity. The Supreme Court, however, has upheld the retroactive application of economic legislative actions with comparable time periods. *See, e.g., General Motors Corp. v. Romein*, 503 US 181, 112 S Ct 1105, 117 L Ed 2d 328 (1992) (six years). Based upon that precedent, together with the fact that the rule at issue applied to only tax years still open to examination, we conclude that application of OAR 150-314.280-(M) (1995) to the tax years at issue would not violate the requirements of due process. Thus, for the reasons stated above, we conclude that the Tax Court erred by holding that the department lacked authority to include taxpayer's intangible personal property in the apportionment formula used to allocate taxpayer's income to Oregon under ORS 314.280 for tax years 1988 through 1992.

## TAXPAYER'S CROSS-ASSIGNMENT OF ERROR

As previously described, 337 Or at 627-28, after the Tax Court granted taxpayer's summary judgment motion respecting the inclusion of taxpayer's intangible personal property in the apportionment formula, the case proceeded to trial on taxpayer's statute of limitations claim and the department's counterclaim relating to the receipts factor of the apportionment formula. At trial, taxpayer conceded the department's counterclaim on the merits but, as relevant here, asserted that that claim was time-barred for tax years 1988 and 1989. Specifically, taxpayer challenged the validity of the parties' agreement extending the limitations period for 1988 and 1989 upon the ground that the department had notice of corrections to taxpayer's federal tax liability more than two years before that extension agreement had been executed. *See* ORS 314.410(3) (providing two-year period of limitations from notice of federal correction for department to issue notice of deficiency); ORS 314.410(6) (providing that parties may enter extension agreement before expiration of any period of time prescribed for giving of notice of deficiency). After concluding that the evidence as to that question was in "a position of equipoise[,]" the Tax Court rejected taxpayer's argument, because it determined that taxpayer bore the burden of persuasion under ORS 305.427[9] and that taxpayer had failed to satisfy that burden.

In a cross-assignment of error, taxpayer contends that the Tax Court erred by holding that taxpayer bore the burden of proving that the parties' extension agreement was invalid because the department had received notice of federal corrections to the 1988 and 1989 tax years more than two years before the parties' agreement had been executed. Based upon that argument, taxpayer asserts that, if this court concludes that the department had authority to include

---

[9] ORS 305.427 provides:

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation."

taxpayer's intangible personal property in the apportionment formula, then this court nevertheless should affirm that part of the judgment awarding taxpayer refunds and interest for the 1988 and 1989 tax years on statute of limitations grounds.

■  Before turning to the merits, we first address the department's contention that we are precluded from considering taxpayer's statute of limitations argument because taxpayer failed to raise that argument by way of a cross-appeal. This court previously has explained that a respondent who seeks only to sustain a judgment is not required to cross-appeal to assign error to a ruling of the trial court. *Artman v. Ray*, 263 Or 529, 533, 501 P2d 63, 502 P2d 1376 (1972). In this case, taxpayer expressly raised its statute of limitations argument only as an alternative ground for this court to affirm a part of the Tax Court judgment and, in doing so, waived any claim to additional relief that it might have been entitled to receive if this court were to rule in its favor on that issue.[10] Thus, taxpayer's proffered statute of limitations argument invokes the "right for the wrong reason" principle as a ground for affirming the Tax Court judgment and, as such, properly may be considered in the absence of a cross-appeal. *See generally Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (discussing "right for the wrong reason" principle for affirming trial court's ruling).

■  Having explained why it is properly before us, we now consider the merits of taxpayer's statute of limitations argument. Taxpayer does not dispute that the department's notices of deficiency for tax years 1988 and 1989 were timely

---

[10] The judgment from the Tax Court provides that, although taxpayer stipulated to judgment against it on the department's counterclaim without reservation of a right of appeal, the parties' stipulation provides that, "if [taxpayer] prevail[s] on an appeal of [its] statute of limitations claims for tax years 1988 [and] 1989 * * *, then the case will be remanded to the Oregon Tax Court for a corrected judgment that, in addition to other possible relief, denies the [department] its counterclaim for 1988 [and] 1989 * * *." By electing not to cross-appeal, taxpayer has waived any claim to relief as to the department's counterclaim, even if it were to prevail in its statute of limitations claim, because such relief would require a modification of the Tax Court judgment. *See Booras v. Uyeda*, 295 Or 181, 189, 666 P2d 791 (1983) (failure to file cross-appeal precludes appellate court from considering argument as basis to modify judgment).

under the parties' extension agreement. Instead, taxpayer challenges the validity of that agreement and, specifically, the Tax Court's determination that it bore the burden of proving that that agreement was defective. In making that challenge, taxpayer acknowledges that ORS 305.427 places the burden of persuasion upon the party seeking affirmative relief in Tax Court proceedings. *See* ORS 305.427 (so providing). It argues, however, that it is inequitable to apply that rule to its statute of limitations claim because, according to taxpayer, the department's record-keeping practices make it impossible for taxpayer to determine whether the Internal Revenue Service (IRS) had notified the department of corrections to taxpayer's federal tax liability more than two years before the parties had executed their agreement. For the reasons explained below, we reject taxpayer's argument.

As noted above, ORS 305.427 places the burden of persuasion upon the party seeking affirmative relief in Tax Court proceedings. We perceive no inequity from the application of that rule here because, as the Tax Court observed, ORS 314.380(2) (1995)[11] required taxpayer to notify the department of any corrections to taxpayer's federal tax liability at the time when those federal corrections were proposed. Although the IRS had issued a correction to taxpayer's 1988 and 1989 federal taxable income in June 1995, taxpayer does not dispute the Tax Court's finding that the parties had executed the extension agreement within two years after taxpayer first notified the department of those federal corrections in February 1997. We agree with the Tax Court that "it is not equitable for taxpayer to plead for certainty but fail to take acts, required of it under ORS 314.380, which would produce such certainty and satisfy a statutory obligation." The Tax Court correctly determined that taxpayer had the burden to prove that the parties' extension agreement was defective and that taxpayer had failed to do so.

---

[11] ORS 314.380(2) (1995) provided, in part:

"If the amount of a taxpayer's federal taxable income reported on a federal income tax return for any taxable year is changed or corrected by the United States Internal Revenue Service or other competent authority, resulting in a change in the taxpayer's net income which is subject to tax by this state, the taxpayer shall report such change or correction in federal taxable income to the department."

The decision of the Tax Court is reversed in part and affirmed in part, and the case is remanded to the Tax Court for further proceedings.