28          January 26, 2015          No. 4

## IN THE OREGON TAX COURT
## REGULAR DIVISION

DEPARMENT OF REVENUE,
*Plaintiff,*

*v.*

RENT-A-CENTER, INC.
& Subsidiaries,
*Defendants.*

(TC 5224)

Plaintiff Department of Revenue (the department) appealed from a Magistrate Division decision as to corporation income tax. The parties initially proceeded on cross-motions for partial summary judgment seeking a ruling as to whether the provisions of ORS 317.705(3)(a) were to be read conjunctively or disjunctively, *i.e.*, whether all three of subparagraphs (A), (B), and (C) in the statute were to be satisfied or whether one or more, but not necessarily all subparagraphs, could be satisfied. Granting the motion of Defendants (taxpayer) for partial summary judgment, the court ruled that its analysis of the legislative history led to a determination that the legislature intended the word "and" to be read conjunctively within the statute at issue.

Oral argument on cross-motions for partial summary judgment was held December 2, 2014, in the courtroom of the Oregon Tax Court, Salem.

Melisse S. Cunningham, Senior Assistant Attorney General, Department of Justice, Salem, filed the motion and argued the cause for Plaintiff Department of Revenue (the department).

Hollis L. Hyans, Morrison and Foerster LLP, New York, filed the cross-motion and argued the cause for Defendants (taxpayer).

Decision for Defendants rendered January 26, 2015.

**HENRY C. BREITHAUPT, Judge.**

### I.   INTRODUCTION

This income tax matter relating to tax year 2003 is before the court on cross-motions for summary judgment. Both Plaintiff Department of Revenue (the department) and Defendants (taxpayer) seek a ruling as to how the provisions of ORS 317.705(3)(a) are to be read. Such a ruling will be of

importance to both parties as they proceed with discovery and preparation of this case.

## II.  FACTS

Neither party has suggested that there are any factual disputes preventing the court from ruling on the proper reading of the statute.

## III.  ISSUE

The parties are separated by whether all three of subparagraphs (A), (B), and (C) in the statute must be satisfied—as taxpayer argues—or whether "an exchange of value" may be "demonstrated" by a showing that one or more, but not necessarily all, of the subparagraphs are satisfied—as the department argues.

## IV.  ANALYSIS

A.  *The Statute*

This issue of statutory construction starts, of course, with the language of the statute—ORS 317.705.[1] The relevant language provides:

"(2)  'Unitary group' means a corporation or group of corporations engaged in business activities that constitute a single trade or business.

"(3)(a)  'Single trade or business' means a business enterprise in which there exists directly or indirectly between the members or parts of the enterprise a sharing or exchange of value as demonstrated by:

"(A)  Centralized management or a common executive force;

"(B)  Centralized administrative services or functions resulting in economies of scale; and

"(C)  Flow of goods, capital resources or services demonstrating functional integration.

"(b)  'Single trade or business' may include, but is not limited to, a business enterprise the activities of which:

---

[1] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2001.

"(A)   Are in the same general line of business (such as manufacturing, wholesaling or retailing); or

"(B)   Constitute steps in a vertically integrated process (such as the steps involved in the production of natural resources, which might include exploration, mining, refining and marketing)."

This statutory language was added to ORS chapter 317 in a special session held in 1984. Or Laws 1984, ch 1, § 4 (Spec Sess) (the 1984 statute).

In 2007 the legislature amended the language of the 1984 statute to change the word "and" in the statute to the word "or." Or Laws 2007, ch 323, § 1 (the 2007 statute). A Staff Measure Summary for that change states that the bill making the change "[c]larifies language pertaining to the definition of a 'unitary business.'" Staff Measure Summary, SB 178-A, May 11, 2007. The provisions of the 2007 statute were expressly prospective only in application. Or Laws 2007, ch 323, § 3 (effective for tax years beginning on or after January 1, 2007).

## B.   *Interpretive Rules*

Until 2006, interpretive rules promulgated by the department stated that "[e]ach of the three criteria listed in ORS 317.705(3)(a)(A)-(C) must be present to meet the definition of 'single trade or business.'" OAR 150-317.705(3)(a) (2003 ed) (the 2003 Rule). That language did not appear in the rule until late 1986.[2] However, ORS 317.705(3)(a) was enacted in 1984, effective January 1, 1986. Or Laws 1984, ch 1, §§ 4, 20 (Spec Sess). Former ORS 314.363(3), which provided that an "affiliated corporation" constituted part of a unitary group when "it is engaged in business activities which are integrated with, dependent upon, or which contribute to the business activities of the group as a whole,"

---

[2] The department first promulgated rules under section 317.705 in 1985, with a December 31, 1985, effective date. *See* OAR 150-317.705 (1986 edition). The initial rule did not include the language at issue, but provided for a consideration of "all direct and indirect relationships" to determine whether a "single trade or business exists[.]" *Id.* The "[e]ach of the three criteria" language was added to the rule, and the rule was renumbered to OAR 150-317.705(3)(a), effective December 31, 1986. RD 10-1986 (Dec 31, 1986). The reference to the statute itself was added in late 1987. RD 15-1987 (Dec 10, 1987).

was repealed in 1984, also effective January 1, 1986. Or Laws 1984, ch 1, §§ 18, 20 (Spec Sess). The department's rule under ORS 314.363, which also contained those three factors, remained in the Oregon Administrative Rules until at least 2003.[3] That the rule remained listed, however, cannot save the department from the express statutory requirements of ORS 317.705(3)(a)(A) to (C) or the legislature's repeal of former ORS 314.363.

In late 2006 the department amended its interpretive rule (the 2006 Rule) to state that "the presence of one or two such factors may also demonstrate the flow of value requisite for a single trade or business." *See* OAR 150-317.705(3)(a) (2007); REV 11-2006 (Dec 27, 2006) (effective Jan 1, 2007). The rule, read together with OAR 150-305.100-(B) (2010), would apply to all periods open to examination. *See U.S. Bancorp v. Dept. of Rev.*, 337 Or 625, 638-39, 103 P3d 85 (2004) (allowing retroactive application of rules). The 2003 year at issue in this case was open to examination at the time the department took the action about which taxpayer complains in this case.

## C.   *Only the 1984 Statute is Relevant*

Notwithstanding the attempts by each party to gain some benefit from the provisions and legislative history of the 2007 statute, the only law relevant to this case is the 1984 statute. The substantive changes made by the 2007 statute were expressly applicable only for years beginning on or after January 1, 2007. Or Laws 2007, ch 323, § 3.

Any legislative history of the 2007 statute may well serve to indicate what the intent of that legislature was. It cannot be considered in determining what the intent of the 1984 legislature was. *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 327, 337 P3d 768 (2014).

---

[3] OAR 150-314.363-(B) provided that "[a]n affiliated corporation will be considered a member of a unitary group when the corporation's business activities are integrated with, dependent upon, or contribute to the business activities of the group as a whole." The rule was not repealed until sometime between 2003 and 2005: OAR 150-314.363-(B) was still present in the 2003 version of the OARs, while it was absent from the 2005 version.

D.  *Department Rules Valid Only If Consistent With 1984 Statute*

After determination of the proper construction of the 1984 statute, the court may determine the effect, if any, of the interpretive rules of the department—and particularly whether the 2006 Rule, upon which the department relied in taking action against taxpayer, was a permissible interpretation of the 1984 statute.

E.  *Construction of the 1984 Statute*

The court first looks to the text of the statute. The conjunctive word "and" found in the statutory listing of factors indicates that each and every one of the factors must exist if a single trade or business is to be found. As already mentioned, this is the reading of the 1984 statute by taxpayer.

Although the department acknowledges that the word "and" is typically read as conjunctive, it states "[i]t is universally held *** that 'and' may be construed to mean 'or' when necessary to effectuate the intention of the legislature and to avoid an unreasonable or absurd result."

Accepting the argument of the department that in some cases "and" may be read disjunctively rather than conjunctively where necessary to effect legislative intent, the court next consults the statutory context to determine if it provides an indication of legislative intent.

The context in which the (3)(a) factors are found does not lead to a definite conclusion. Although paragraph (3)(b) lists other examples of what may constitute a "single trade or business," its provisions are examples only. They do not purport to supplant the predicate requirements of paragraph (3)(b). Stated differently, in all cases paragraph (3)(a) must be satisfied. In some cases a business having those factors may also be of the type described in paragraph (3)(b).

With neither text nor context leading to a definite conclusion, the court looks to legislative history to determine whether the legislature intended the word "and" to be read disjunctively or conjunctively.

Although the department "acknowledges that the 1984 legislative history indicates witnesses before a legislative committee interpreted 'and' in the [conjunctive] sense," neither the department nor taxpayer has provided the court with any testimony of witnesses.[4]

The court has reviewed the legislative history of the 1984 Special Session and found the following:

Unitary apportionment was a major concern of the legislature in 1984. The Joint Interim Committee on Revenue and School Finance (the Joint Committee) met multiple times in 1984 and discussed unitary taxation at many of these meetings. Minutes, Joint Committee, Feb 3, 1984, 3-4; Minutes, Joint Committee, Mar 15, 1984, 5-7; Minutes, Joint Committee, Mar 16, 1984, 2-4; Minutes, Joint Committee, May 31, 1984, 7-9; Minutes, Joint Committee, Jun 1, 1984, 1-3.

Indeed, there was pre-session review of the bill by taxpayers and counsel for taxpayers and the government. Tape recording, Special Committee, HB 3029, July 26, 1984, Tape 94, Side B (statement of Elizabeth Stockdale) ("We tried

---

[4] As discussed below, representatives, senators, the legislative revenue officer, and the department's own representative discussed these changes at length in meetings of both the House Special Committee on Revenue (the Special Committee) during the 1984 special session and in the Joint Committee the week before. These discussions, and in fact the existence of the Joint Committee's meetings the week before the special session, would not be immediately apparent from a review of the minutes or audio recordings of the Special Committee limited to specifically identified sections of the bill. There was little discussion of the proposed amendments in Elizabeth Stockdale's review of section 4 of the bill (the section which added the changes that are in question here). Tape recording, Special Committee, HB 3029, July 25, 1984, Tape 89, Side A (statement of Elizabeth Stockdale). The relevant discussion of section 4 highlighted below actually occurred during discussion of section 17 of the bill. Tape recording, Special Committee, HB 3029, July 25, 1984, Tape 90, Side A (statement of Elizabeth Stockdale).

As for the Joint Committee meetings the week before, nothing in the exhibits or minutes of the Special Committee would readily lead one to realize that those prior meetings occurred or were relevant to the special session. However, shortly following the discussion of section 4 and other times over the course of the Special Committee's meetings on July 25 and 26, 1984, Stockdale made references to discussions from "last week" (as well as a reference to "last time" in the first part of the first day of the special session), that led the court to discover the extensive discussions that occurred in the earlier Joint Committee meetings. Tape recording, Special Committee, HB 3029, July 25, 1984, Tape 89, Side A (statement of Elizabeth Stockdale).

by having this thing reviewed by taxpayers and taxpayer's um, tax practitioners as well as Department of Revenue staff and, and I've had other attorneys in the Department of Justice look at, look at the language to try to, to get out of the bill as many vaguenesses as possible.").

The language at issue was discussed in pre-session committee meetings. On July 19, 1984, Governor Atiyeh presented his initial proposed bill to the Joint Committee. Minutes, Joint Committee, July 19, 1984, at 4. Following the Governor's general discussion of the policy reasons behind the proposed changes to Oregon's worldwide tax structure, Assistant Attorney General Elizabeth Stockdale representing the Department of Revenue spent considerable time explaining the bill's provisions. The relevant discussion from her explanation to the Joint Committee was as follows:

> Stockdale: "We've attempted here, in section 4 to tighten up our definition of what a unitary business is what a unitary group is for purposes of sorting those nonunitary corporations out of the consolidated return. And uh, in the hopes that when taxpayers try to decide what should stay in what should go out for the Oregon base they'll have an easier time of it. Uh and so there are specific requirements um that are specified in the in the bill in order to do this and they're, they're consistent with the, the Oregon rules that we have now—administrative rules and court cases that uh have been handed down both by the State of Oregon courts and the United States Supreme Court."

> \* \* \* \* \*

> Senator Nancy Ryles: "So then there really are no changes, you're just spelling it out in the law that way?"

> Stockdale: "Well there is one change um, that I should point out and that is that um in the definition of single trade or business which is part of the unitary group definition if you'll look at ah, subsection 3, ah, subparagraph capital B at the end of that it says 'and.' Our current practice um has been, has used an 'or' there. So there will have to be one element from each of these three uh, capital A, capital B, capital C, for there to be a unitary relationship. Centralized management or common executive force, and centralized administrative services or function, and either flow of goods or capital resources or services."

\* \* \* \* \*

Stockdale: "Well, the current—uh, most of our litigation um, involving multi-state issues has in the past has involved what is a unitary business. It's been a very difficult definition to get a hold of um, the Supreme Court has had difficulties with it the states have had difficulties with it, taxpayers have had difficulties with it. As we go—have have gone through time and the courts have seen more and more kinds of businesses and tried to apply the unitary concept to them we've gotten a few rules ah, laid down with a little more specifics than contributing to, dependent upon, and integrated with. And so we're trying to incorporate those into our statute so that it's clear that we're trying to follow those rules. There still will be, I'm sure, room for dispute under this definition. There is no way you can perfectly define what a unitary business is because every business is different and it's a factual determination. But this is an attempt to, to put some of those rules into the statute. And uh, and try to assist in uh defining what it is. What a unitary business is."

Representative John Schoon: *"Elizabeth, now I understand you say that a unitary business would have to have A, B, and C—capital A, capital B, and capital C.* Uh, I really thought uh, when I read this that it would have been 'or' in between each of those three items and uh, uh from what you'd said earlier uh as the Supreme Court has defined a uh, unitary business because I thought that any one of those factors—and I was particularly looking for the uh capital resources flowing where nothing else existed—in fact I thought you'd used that as an example, of where a company could be unitary if it was merely supported by capital resources not necessarily through centralized management or purchasing."

Tape recording, Joint Committee, July 19, 1984, Tape 81, Side B (emphasis added). Section 4 of the Governor's draft bill remained unchanged from this date to the bill's passage. *See* Testimony, Joint Committee, July 19, 1984, Ex 9.

The language at issue was discussed again during the Special Session. Stockdale discussed it in an interchange between her and Representative Wally Priestly:

Representative Wally Priestly: "Uh, just back to kind of confirm this point *under section 4, on page 4, the uh, the*

*definition of the unitary group* which is now going to go from 50 to 80 percent of ownership, [Stockdale: "mm hm"] in addition to that *we're also limiting it by the, by the use of the word 'and' so that it has to meet all of these conditions rather than just just each condi—one of the conditions* [Stockdale: "*That's right.*"] *using the word 'or'—is that right?*"

Stockdale:  "*That's right.*"

Priestly:  "Why do we, why is that beneficial, um, ah, couldn't, could we not go with the consolidated uh, filing and uh maintain the broader-based unitary group by, by having it 'or' so that these people could have, might have uh as it turns out now they could have a single trade or business, they could be centralized management, centralized administrative services, and maybe not have a flow of goods and capital resources, and then they fall out of the unitary. Why is it—why do we need to make it 'and' versus 'or'?"

Stockdale:  "The idea of changing that—we're trying to tighten up the definition of unitary. Even though there's been a lot of litigation over the years as to what constitutes unitary business, it's such a fact-intensive determination that there are some—there are still probably many cases where there's a legitimate argument as to whether there's a unitary business or not because of what the elements are that are there if there's a strong centralized management um, but there's no flow of services or goods or capital resources among the, among the members or if there's uh, uh some flow of goods but it's not a lot and there's nothing else. And, and so we still wind up with qualitative kinds of judgments that have to be made about the facts that are presented and the uh, the attempt in this definition is to say rather than have the total amount of, of flexibility that creates with—with flexibility on one side, doubt on the other on the part of taxpayers and the department as to what really is a unitary business by tightening that up and trying to, trying to eliminate some of the gray area, of those, those businesses that fall in the gray area we're not really sure whether they're unitary, we're not really sure whether they're not—we wind up in court trying to argue about it and it really is expensive and time consuming for everyone, just making a choice to say okay…"

Tape recording, House Special Committee on Revenue, HB 3029, July 25, 1984, Tape 90, Side A (emphases added).

The following day, Jim Scherzinger from the Legislative Revenue Office, also reiterated use of the word "and":

> "Uh, uh, Policy Option B is definition of a unitary group and this bill, the Governor's bill does redefine what a unitary group is. Imagine that my summary of the [inaudible] and my summary of the current law, the Governor's bill is, is totally uh, on point but I can get maybe Elizabeth is much better at explaining all the nuances of shifting the definition, but under current law, uh, the the unitary group is defined as an affiliated base [inaudible] with dependent on or contributing to a unitary business and the director has a, a deal of latitude, he has some latitude in the definition to uh, in the, and the taxpayer does to seek modification of the unitary treatment. *And in this bill, redefines the, the unitary group ah and specifically has a 'and' when it comes to centralized management, integrated functions and centralized administrative services.* And secondly, says that in that area where you have to, to, you may appeal for a uh, a different treatment than what the law says that uh, that you must show that it violates your constitu—your that violates your constitutional rights. To be treated the way the law—as opposed to leaving the discretion totally [inaudible]."

Tape recording, House Special Committee on Revenue, HB 3029, July 26, 1984, Tape 94, Side B (statement of Jim Scherzinger) (emphasis added).[5]

Additionally, the Legislative Revenue Office's revenue analysis of the proposed bill described the amendment thus: "[c]hanges definition of unitary group to corporations engaged in a single trade or business *that requires* (a) centralized management, (b) integrated functions, and (c) centralized administrative services." Testimony, House Special Committee on Revenue, HB 3029, July 25, 1984,

---

[5] Scherzinger's reference to "Policy Option B" comes from an exhibit to testimony in the Special Committee. Testimony, House Special Committee on Revenue, HB 3029, July 26, 1984, Ex 1. The document, prepared by the Legislative Revenue Office, was titled "Unitary Policy Options" and contained six policy options. *Id.* Policy Option B ("Definition of Unitary Group") listed "Current Law" as "Affiliated business integrated with, dependent upon, or contributing to unitary business." *Id.* at 1. It listed under "Governor's Bill" the following: "Affiliated business requiring centralized management, integrated functions, and centralized administrative services." *Id.* (underscoring in original).

Ex 4 (emphasis added). Finally, Stockdale, in her initial discussion of section 4 in the special session, referred to the requirements in the definition of unitary group as "elements." Tape recording, House Special Committee on Revenue, HB 3029, July 25, 1984, Tape 89, Side A (statement of Elizabeth Stockdale).

These focused and specific discussions of how the statute is to be read can support no other conclusion than that the 3(a) factors must be read conjunctively. Indeed, it is rare that a question presented in court was so specifically and definitively discussed in the legislative process.

The court concludes that the legislature in 1984 intended that ORS 317.705(3)(a) be read as requiring all three factors be present if there was to be a finding of a "single trade or business."

F.   *Court Opinions*

The department argues, however, that this court has indicated on more than one occasion that the legislature intended its definition of a unitary business to reach the limitations on such concept under the Constitution of the United States.[6] The department then observes that case law of the United States Supreme Court indicates that the presence of all three factors listed in the 1984 statute are not required to pass constitutional muster. The department concludes that the 1984 statute should be construed as extending to the constitutional limit and not the more restrictive conjunctive reading propounded by taxpayer.

The first problem with this argument of the department is its implicit premise that court opinions after the adoption of legislation can foreclose conclusions based on the intent of the legislature that brought the legislation into force. That is not an acceptable conclusion.

Secondly, the opinions of this court on which the department relies do not in fact supply a basis for the argument of the department.

---

[6] The cases are *Maytag Corp. v. Dept. of Rev.*, 12 OTR 502 (1993) and *Ann Sacks Tile & Stone, Inc. v. Dept. of Rev.*, 20 OTR 377 (2011).

G.  *Maytag*

In *Maytag Corp. v. Dept. of Rev.*, 12 OTR 502 (1993), this court was faced with a problem of unitary relationship among a group of enterprises shortly after the decision of the United States Supreme Court in *Allied Signal v. Director, Tax Div.,* 504 US 768 (1992) and approximately a decade after the decision of that court in *Container Corp. v. Franchise Tax Board,* 463 US 159 (1983) and the adoption of the 1984 statute. The years at issue in *Maytag* were 1984 through 1987. *Maytag*, 12 OTR at 503. The 1984 statute was effective for the 1986 and following years and thus applied to at least some of the years at issue in *Maytag*.

This court first addressed the significance of *Container Corp.*, in the determination of whether, *constitutionally*, a unitary business relationship existed among several corporations.[7] This court stated "[i]t would appear that the Oregon statutes before and after *Container Corp.* intend to assert jurisdiction to the full extent allowed by the Due Process Clause." *Maytag*, 12 OTR at 506.

However, this court's discussion as to the scope of the 1984 statute continued by saying that its view was "reinforced by the presumption of *the administrative rule* that a business is unitary from the mere presence of one of three factors." 12 OTR at 506 (emphasis added). In a footnote immediately following that language this court stated "[t]he court in *Container Corp.* found a similar presumption in the California law to be reasonable." *Id.* n 3.

Only after that discussion did this court find that the legislature in 1984 intended to assert jurisdiction to tax to the full extent allowed by due process. This court then surveyed United States Supreme Court precedent as to constitutional limits.[8] *Id.* at 507-08. Although this court in *Maytag* discussed the unitary factors found in the 1984

---

[7] The unitary relationship among business entities is often referred to as "enterprise unity." *See* Jerome R. Hellerstein & Walter Hellerstein, *State Taxation* ¶ 8.07[2][a] (3d ed 1998).

[8] In doing so this court appears to have treated the tests for asset unity found in *Allied Signal* to be an additional test for enterprise unity. This approach has been held to be in error. *MeadWestvaco Corp. v. lll. Dept. of Rev.*, 553 US 16, 29-30, 128 S Ct 1498, 170 L Ed 2d 404 (2008).

statute, its final conclusion seems to be based on the operational versus investment criteria of the *Allied Signal* decision. That certainly weakens any basis for treating *Maytag* as definitively concluding that as few as one statutory factor would suffice to support a conclusion that two entities were in a unitary relation.

More importantly, in relying on "the administrative rule" to conclude that the presence of one of three factors could support a unitary finding, this court unfortunately relied on an administrative rule, OAR 150-314.615-(E), that had been promulgated under the statutes in effect prior to the adoption of the 1984 statute. That rule was clearly not an acceptable interpretation of the 1984 statute and its application to at least some of the years at issue in the case. The legislative history referenced above makes clear that the legislature intended that the 1984 statute would change, and make more objective, the standards for determining unitary relationships among business entities. In addition, the department rule containing a conjunctive reading of the 3(a) factors was applicable for years beginning on or after January 1, 1986.

In *Maytag* this court did not address the question, presented now, as to how to read the 1984 statute and the apparently conjunctive language of paragraph (3)(a). Nor did the court address the legislative history of the 1984 statute on the question now presented. *Maytag* cannot be viewed as a reason for this court to now address the question before it by reference to the ultimate test of legislative intent.

H.   *Ann Sacks Tile & Stone, Inc.*

The department also points to this court's decision in *Ann Sacks Tile & Stone, Inc. v. Dept. of Rev.*, 20 OTR 377 (2011) for the proposition that the reach of chapter 317 is to the constitutional limits. In *Ann Sacks* this court stated:

> "Under ORS 317.018 and the case law of this court, the legislature is considered in ORS 317.070 to have extended the reach of the excise tax to the limit defined by the federal constitution. *Maytag Corp. v. Dept. of Rev.*, 12 OTR 502 (1993); *see also Amer. Refrig. Transit Co. v. Tax Com.*, 238 Or 340, 395 P2d 127 (1964) (appealed from *Amer. Refrig. Trans. Co. v. Commission*, 1 OTR 429 (1963)."

*Ann Sacks*, 20 OTR at 380-81 (2011). That quotation comes from a portion of the decision in *Ann Sacks* dealing with the question of whether the taxpayer there was "doing business" within the meaning of ORS 317.070. The issue was whether a company was subject to the jurisdiction of Oregon, not whether a company concededly subject to such jurisdiction was in a unitary relationship with another company. The 1984 statute was in no way at issue in *Ann Sacks*.

Further, the court's citation to *Maytag* and to *Amer. Refrig. Transit* should be read as somewhat confusing. *Maytag* did not deal with jurisdiction of Oregon over a taxpayer. *Amer. Refrig. Transit* did deal with that question. That jurisdictional question is quite different from the scope of the 1984 statute in taking into consideration the income of affiliates bearing a unitary relationship with a company, here taxpayer, over which there is no question that Oregon has jurisdiction.

For the foregoing reasons, the case law of this court cannot be seen as an impediment to reading the 1984 statute in the way the Oregon Legislature intended it to be read.

## V.   CONCLUSION

The 1984 statute governs this case. Under the 1984 statute, the provisions of paragraph (3)(a) of the statute are to be read conjunctively. All of the factors stated in paragraph (3)(a) must be satisfied. To the extent that the department wishes to apply its 2006 rule retroactively to the 2003 year, that rule cannot be given effect as it is inconsistent with the governing statute.

The motion of taxpayer is granted and that of the department is denied. Now, therefore,

IT IS ORDERED that Defendants' Motion for Partial Summary is granted; and

IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Partial Summary Judgment is denied.