Submitted on Briefs December 17, 1952, modified March 4, 1953

# DEMERS $v$. PETERSON
254 P. 2d 213

*Rhoten, Rhoten & Speerstra,* of Salem, for appellant.
*George Neuner,* of Salem, Attorney General, and

468

*Cecil H. Quesseth* and *John D. Nichols,* Assistant Attorneys General, both of Salem, for respondent and cross-appellant.

## LATOURETTE, C. J.

Plaintiff, an operator of some 50 airplanes engaged in dusting and spraying agricultural crops, and forest lands under contract with the State of Oregon and the United States, instituted proceedings under the uniform declaratory judgments act directed against the director of the Oregon State Department of Agriculture to determine the constitutionality of ch 645, Oregon Laws 1951, the title of which act follows:

> "AN ACT relating to the control of the application of certain chemicals and other substances or materials, by aircraft or by other means, for agricultural purposes; creating new provisions; appropriating money; providing penalties; repealing section 35-111, O.C.L.A.; and declaring an emergency."

The trial court found certain portions of the act to be unconstitutional but refused to adjudicate on the remainder. Both parties appeal from the decree of the lower court.

Plaintiff has assailed the constitutionality of the act in several respects, one of which is that the act delegates the authority to promulgate regulations without providing for any definite standard in violation of Article III, § 1 of the constitution of Oregon. The trial court found the act unconstitutional in this respect.

The act in question is known as the "Oregon Agricultural Chemical Control Act." After defining the meaning of certain deleterious substances, such as in-

secticides, and providing for the obtaining of an aircraft operator's license to engage in aerial spraying, the act further provides, among other things, as follows:

"Section 15. (1) The department may, after public hearing, make regulations for carrying out the provisions of this Act. Notice of such hearing shall be published in a newspaper of general circulation throughout the state at least 10 days prior to the date of the hearing. The notice shall state in general terms the substance of the proposals to be made at such hearing. Regulations promulgated pursuant to the provisions of this section shall not be inconsistent with regulations or laws of this state or of the Federal Government with respect to safety in air navigation or operation of aircraft. Before issuing regulations related to any matter within the jurisdiction of any other official of this state, the department, through the director or a person appointed by him, shall consult with that agency with reference thereto.

"(2). The State Board of Aeronautics may make such reasonable regulations relating to the operation of aircraft for hire for the application of materials as may be necessary to carry out the provisions of this Act, but such regulations shall not be inconsistent with regulations or laws of this state or of the United States Government with respect to safety in air navigation or operation of aircraft.

"* * * * * *

"Section 34. Violation of any provision of this Act or of any regulation promulgated under this Act is punishable, upon conviction, by a fine of not less than $25 nor more than $500, or by imprisonment in the county jail for a period not exceeding six months, or both."

■ It is well established that the legislature cannot grant an administrative agency the power to regulate

unless some standard or yardstick is provided in the act as a guide to the administrative agency; in other words, the authority to regulate may not be left wholly to the whim and caprice of such agency. *Multnomah County v. Luihn et al.,* 180 Or 528, 542, 178 P2d 159; *City of Portland v. Welch,* 154 Or 286, 303, 59 P2d 228, 106 ALR 1188; *Van Winkle v. Fred Meyer, Inc.,* 151 Or 455, 466, 49 P2d 1140.

From a reading of the sections of the law hereinbefore quoted, the department, as well as the State Board of Aeronautics, has the unlimited power to make regulations to carry out the provisions of the act so long as they do not conflict with the laws of the state or the federal government. Beyond this, the sky is the limit. There is no suggestion in the title of the act or in the act itself of the nature, extent or character of the regulations. It would appear that the department has carte blanche authority, beyond the limitation above mentioned, to formulate any regulations which it sees fit. Under a blanket authority the rule-making bodies or their directors could conjure up from their fancies or imaginations any regulation which might come to mind. For a violation thereof, the licensee could be fined, imprisoned and have his license revoked.

■ We hold that the above sections of the act relating to the rule-making power are unconstitutional in that the act contains no rule or standard fixed for the guidance of the administrative bodies in that respect.

The trial court did not declare the act unconstitutional in its entirety, holding that the plaintiff could not question the validity of §§ 17 to 32, inclusive, of the act, stating as follows:

"Sections 17 to 32, inclusive, of the statute provide for the creation of certain governmental subdi-

visions of the State referred to as 'protected areas'. With certain notable and pertinent exceptions, such sections appear to be taken from Title 109, Chapter 3, O.C.L.A. relating to the creation of soil conservation districts. In a proper case the validity of those sections of this statute may be questioned on constitutional grounds, however there is no evidence in this record that the creation of any 'protected area' has been, or will ever be, initiated. There being no adverse parties to any justiciable controversy arising out of such provisions of the statute in this case, the court has no authority to consider and determine their validity."

We believe that the court took too narrow a view of the matter in this respect because, as we will presently show, the State Department of Agriculture, represented by the defendant Peterson, its director, is delegated the authority to carry into effect the organization of the protected area provisions embraced within §§ 17 to 32, inclusive, and to approve regulations promulgated by the governing committee and is, therefore, an adverse party.

■ We further believe that there is a justiciable controversy between the parties involving the protected area.

It is contended by the defendant that no protected area district has as yet been organized; that, for this reason, plaintiff is not presently affected; and that, by virtue of *Ore. Cry. Mfgs. Ass'n v. White,* 159 Or 99, 78 P2d 572, and *Amer. F. of L. v. Bain et al.,* 165 Or 183, 106 P2d 544, 130 ALR 1278, plaintiff is not in a position to raise the question of the constitutionality of the sections of the statute above referred to.

In the case of *Oregon Cry. Mfgs. Ass'n v. White,* supra, there was no actual controversy between the

parties. The plaintiffs pleaded that the act under consideration (p. 104),

> " ' * * * created a condition of doubt and uncertainty among the plaintiffs and the members of said Association and other persons and corporations engaged in said industry and among the banks with whom the plaintiffs and the members of said Association do business, making it impossible for plaintiffs and the members of said Association adequately to formulate their plans for the operation or expansion of their respective businesses and said condition of uncertainty has and is injuring the credit of plaintiffs and the members of said Association and diminishing and destroying their ability to borrow funds necessary to finance the operation and expansion of their respective businesses and is restricting and curtailing the volume thereof.' "

At p. 111 we said that:

> "* * * Neither does mere difference of opinion as to the constitutionality of the act afford adequate ground for invoking a judicial declaration having the effect of an adjudication: Borchard, Declaratory Judgments, p. 55."

When taken alone some of the language employed in that opinion relating to the making of rules and regulations appears to support defendants' position; however, in construing the decision, we must consider the facts of the case, and in doing this we find that the plaintiff was on a fishing expedition to clear up uncertainty and doubt regarding the operation of the act, and, for this reason, there was no justiciable controversy between the parties.

In *Amer. F. of L. et al. v. Bain et al.,* supra, we refused to consider the constitutionality of certain provisions of the act in question because no facts were presented by the pleadings or the record disclosing a justiciable controversy. In that case it was contended

that the labor unions were collecting fees, dues and fines for the purpose of caring for the sick and indigent members, etc., and that the defendant district attorney had threatened to prosecute them for such action because said unions were not authorized to exact such fees, etc., from its members. The defendants countered by answer as follows (p. 214):

"  'They have no knowledge or information sufficient to form a belief as to the purposes for which funds are collected by said labor unions, the right of said labor unions to collect funds, or the right of the representatives of said unions to dispose of the same, and therefore deny that they were contending that the funds so collected by said labor unions are collected or disbursed otherwise than in accordance with the legitimate requirements thereof.' "

From the foregoing it is obvious that there was no bone of contention between the parties.

In the present case plaintiff in his complaint asserts the invalidity of the statute being considered and, among other things, complains:

"That said statute attempts to delegate to a committee judicial and legislative powers, contrary to the constitution of the United States of America and of the State of Oregon."

In his answer defendant denies the foregoing allegations of the complaint and admits that he will enforce the provisions of said statute; that,

"* * * defendant claims and asserts that said statute is valid and is not violative of constitutional provisions and that plaintiff is bound by the terms thereof.  *  *  *.";

and that,

"As a further and separate answer to plaintiff's complaint, defendant alleges that the said act (chapter 645, Oregon Laws 1951), is a proper and reason-

able exercise of the state and in all respects valid and constitutional."

As found by the lower court, the evidence reveals that:

"* * * plaintiff is not only an agricultural aircraft operator as defined by the statute but also he has a large investment of money in aircraft equipped and used for such application of materials, which aircraft are operated by employees in the course of his business. Such business involves contracting with farmers and others for the application of materials for agricultural purposes over large areas, and through successful operation in competition with others likewise engaged, it has become of considerable value to him."

■ We have repeatedly held that in determining the validity of a statute the decision of the court must be predicated on what it authorizes to be done and not by what has been done. *M. & M. Co. v. State Ind. Acc. Com.*, 176 Or 35, 155 P2d 933; *Bell v. State Ind. Acc. Com.*, 157 Or 653, 663, 74 P2d 55; *Eastern & Western Lbr. Co. v. Patterson*, 124 Or 112, 258 P 193, 264 P 441; *Sterett & Oberle Packing Co. v. Portland*, 79 Or 260, 154 P 410, 415.

In *Childs v. Marion County*, 163 Or 411, 418, 97 P2d 955, a case brought under the uniform declaratory judgments act, we refused to construe the act piecemeal and said:

"* * * The plaintiff is a person whose rights are affected by the statute (§ 2-1402, Oregon Code 1930), and the assumption of jurisdiction as to all phases of the case is, we think, supported by authority: Salem v. Oregon-Washington Water Service Co., 144 Or. 93, 23 P. (2d) 539; Zoercher v. Agler, 202 Ind. 214, 172 N. E. 186, 172 N. E. 907, 70 A.L.R. 1232. See Borchard, 'Declaratory Judgments', 341-344."

Turning to Borchard, supra, we read:

"Addressing itself to this very point, the supreme court of Virginia, in a recent case, remarked:

" 'The test of the applicability of the statute is the determination of the existence of an actual controversy. The manifest intention of the legislature, as expressed in sections 6140a-6140h of the Code, was to provide for a speedy determination of actual controversies between citizens, and to prune, as far as is consonant with right and justice, the dead wood attached to the common-law rule of "injury before action" and a multitude of suits to establish a single right.

" 'The fact that a plaintiff or complainant might, by the institution of an action or suit or series of actions or suits, eventually, through protracted and continuous litigation, have determined the same questions that may be determined once and for all in a declaratory judgment proceeding, has never, so far as we find, been held by the courts to deprive the court of jurisdiction to enter a declaratory judgment wherein the entire rights of the parties can be determined and settled once and for all. Sections 6140a-6140h of the Code above were enacted for that evident purpose, and section 6140h expressly declares that the act is to be literally interpreted and administered "with a view to making the courts more serviceable to the people." ' "

Sections 17 to 32, inclusive, of the act provide in substance for the giving of notice of a hearing by the Department of Agriculture upon the application of certain landowners proposing to organize a protected area. At such hearing the department determines if there is need, in the interest of general welfare, for a protected area. If such need is determined by such department, it is then its duty to call an election in such area to determine whether or not the landowners within said district shall approve the organization of

such district. Provision is made that at such election the voters may elect a committee composed of three members as part of a governing body of such area. The department appoints two other members to act in conjunction with the three elected members, and such area is declared to be a governmental subdivision of the state and a public body corporate. After the *protected* area has been thus organized, the committee aforesaid may create a *restricted* area after giving notice of a proposed hearing on the creation of a restricted district. It is then provided that:

> "The committee shall make findings of fact as to the desirability and necessity of creating a restricted area and, in accordance with such findings, publish notice of the creation of the restricted area and of such regulations as may apply to the application of herbicides, by aircraft or otherwise, within the protected and restricted area.
>
> "After the creation of a protected area and a restricted area, the committee of the protected area, in consultation with the department, shall issue regulations governing the application of herbicides, by aircraft or otherwise. A copy of such regulations shall be filed in the office of the county clerk of each county in which a part of such areas is situated. No regulation shall have any force and effect against any person affected thereby until such regulations have been approved by the department and have been so filed."

The law also provides that before any person may apply herbicides by aircraft within a protected or restricted district he must obtain a permit for such application from the committee of such area, and that he shall not make application of herbicides by aircraft within such area contrary to the conditions or terms of the permit issued to him.

It seems clear to us that the plaintiff in the opera-

tion of his airplanes in such area might very well come in conflict with regulations approved by the department, of which the defendant Peterson is the director, and expose himself to a fine, jail sentence or revocation of his license.

■■ In any event, since we must liberally construe the uniform declaratory judgments act, we think that the entire controversy should be settled here.

■ The vice of the protected area provisions of the act lies in that portion permitting the committee, with the approval of the department, to formulate regulations pertaining to the application of herbicides. Here, too, as stated in the opinion of the lower court, we have no "guide or standard to which such regulations must conform" and "leaves the power attempted to be delegated unconfined and vagrant and is unconstitutional and void."

It is thus seen that not only the Department of Agriculture but also the State Board of Aeronautics, in addition to the area committee, subject to the approval of the department, have uncontrolled and unfettered power under the act to make rules and regulations governing airplane operators in the application of chemicals, which is a perfect exemplification of bureaucracy in full bloom with attendant confusion worse confounded.

It is our opinion that the act is not severable and, therefore, is unconstitutional in its entirety. *Fullerton v. Lamm,* 177 Or 655, 695, 163 P2d 941, 165 P2d 63. The decree of the lower court will be modified to that extent.