Argued and submitted February 1, 2005, affirmed January 4, 2006

# MAY TRUCKING COMPANY, INC.,
## an Idaho corporation,
### *Petitioner,*

*v.*

# DEPARTMENT OF TRANSPORTATION,
### *Respondent.*

99044, 99706;
A118893 (Control), A121939
(Cases Consolidated)

126 P3d 695

*See also* 388 F3d 1261.

Gordon T. Carey argued the cause and filed the briefs for petitioner.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Wollheim, Presiding Judge, and Edmonds* and Schuman, Judges.

WOLLHEIM, P. J.

---

* Edmonds, J., *vice* Ceniceros, S. J.

## WOLLHEIM, P. J.

Petitioner seeks judicial review of two final orders of the Oregon Department of Transportation (ODOT) that have been consolidated on review. Both orders denied petitioner's pursuit of a refund for fuel taxes paid pursuant to the International Fuel Tax Agreement (IFTA). The first order, issued on July 3, 2002, concerned fuel taxes paid for the year 1998, and the second order, issued on June 24, 2003, concerned fuel taxes paid for the year 1999. Petitioner makes four assignments of error: (1) ODOT erred in concluding that fuel used while a vehicle is idling is taxable under IFTA; (2) ODOT erred in concluding that petitioner must seek a refund for taxes paid from each respective jurisdiction; (3) ODOT erred in concluding that it lawfully adopted and implemented IFTA; and (4) ODOT erred in concluding that IFTA does not violate the Compact Clause, Article I, section 10, clause 3, of the United States Constitution. We reject each of petitioner's challenges and affirm.

## I. FACTS

Petitioner is assessed a fuel tax by ODOT pursuant to IFTA, which is a "multi-jurisdictional agreement that is intended to encourage cooperation in the administration and collection of motor fuel use tax." *May Trucking Co. v. Oregon Dept. of Transportation*, 388 F3d 1261-62 (9th Cir 2004) (internal quotation marks omitted).[1] Federal law mandates that states that choose to impose a fuel tax must participate in IFTA. 49 USC § 31705 (1994). ODOT has the authority to enter into an international fuel tax agreement under ORS 825.555.[2] In 1993, ODOT passed a resolution adopting the

---

[1] In that case, the petitioner filed a separate challenge in federal court in the District of Oregon. That court held that it lacked subject matter jurisdiction under the Tax Injunction Act, 28 USC § 1341, and therefore did not reach the merits of the case. *May Trucking*, 388 F3d at 1274-75.

[2] Petitioner disputes whether ORS 825.555 gives ODOT authority to enter into an international fuel tax agreement, which we will discuss later. ORS 825.555 was formerly numbered as ORS 767.884. Under *former* ORS 767.884 (1995), *renumbered as* ORS 825.555 (1997), the authority to enter into an international fuel tax agreement was vested in the Public Utilities Commission. Because neither party's argument depends on which agency had the authority to enter into IFTA, we will refer to ODOT as the acting agency.

1993 version of IFTA, with an effective date of January 1994. In 1996, ODOT renewed Oregon's membership in IFTA by adopting the 1996 amendments.[3] Essentially, "IFTA enables carriers to file a consolidated tax return in a carrier's 'base jurisdiction;' the base jurisdiction, upon collection of the tax, distributes the revenue to those other jurisdictions in which the carrier operates." *Hi-Way Dispatch v. Dept. of State Revenue*, 756 NE2d 587, 594 (Ind Tax 2001). Because Oregon is petitioner's "base jurisdiction," IFTA allows petitioner to submit one fuel tax return to ODOT instead of having to file a return in every state where petitioner's trucks have operated. Oregon is in a unique situation because, unlike other jurisdictions, it does not itself assess a fuel tax, but instead relies on a weight/mile tax. Thus, Oregon's participation in IFTA is solely to ease the administrative burden that filing returns state by state would impose on Oregon-based motor carriers and other members to the agreement.

The current disputes originated in June 2000 from ODOT Case No. 86504. In that case, ODOT issued a Notice of Audited Tax Liability to petitioner for the period from April 1, 1996 through December 31, 1998, alleging that petitioner owed $491,891.14 in unpaid fuel taxes, interest, and penalties. Petitioner requested a hearing to contest the audit, and a hearing was held in March 2001. At the hearing, petitioner challenged ODOT's auditing practices and made arguments regarding whether the authority to enter into IFTA was properly delegated to ODOT, whether ODOT followed proper procedures in adopting IFTA, whether fuel consumed while idling was taxable under IFTA, and whether IFTA violated the Compact Clause of the United States Constitution. At the hearing, both parties presented lengthy testimony regarding petitioner's record-keeping practices and ODOT's auditing practices.

In a July 23, 2001, proposed order, the administrative law judge (ALJ) first found that petitioner's records were inadequate under IFTA. The ALJ concluded, however, that the audit ODOT performed was unreasonable. The ALJ

---

[3] Petitioner disputes whether ODOT *legally* entered into IFTA in 1993, or *legally* adopted the 1996 amendments. Those contentions will be further discussed below.

based that conclusion on ODOT's exclusion of the highest miles per gallon segments of petitioner's records from its calculations, and ODOT's assumption that, every time petitioner's vehicles were refueled, they were "topped off." The ALJ ruled that petitioner's argument regarding idle time was not ripe for adjudication, and rejected petitioner's arguments regarding IFTA's validity. Ultimately, the ALJ concluded that neither party established petitioner's liability and that petitioner would be subject to further audit.

After the proposed order was issued, the parties entered into a written stipulation that provided:

"1. Petitioner and [ODOT] have agreed that [ODOT] will conduct no further IFTA Fuel Tax Audits for the Audit Period. Petitioner has paid the amounts due as reported in its original returns. No amounts for fuel tax, penalties, or interest are due from petitioner for the Audit Period.

"2. Petitioner agrees not to seek a refund for IFTA Fuel Taxes for the audit period, *except for a refund for fuel consumed while a truck is idling ('idle time' issue),* which petitioner intends to pursue for the year 1998. By execution hereof, respondent does not agree that petitioner is entitled to a refund, or that petitioner can pursue its refund claim from respondent ODOT.

"IT IS SO STIPULATED AND AGREED."

(Internal citations omitted; emphasis added.) The stipulation was signed by attorneys for both parties. No final order was ever issued by ODOT in Case No. 86504.

Based on that stipulation, petitioner requested another hearing to contest the "idle time" issue, which became ODOT Case No. 99044. In its brief to the ALJ, petitioner not only raised arguments regarding the "idle time" issue, but also raised the same arguments concerning the delegation of authority, the adoption of IFTA, and whether IFTA violates the Compact Clause. In response, ODOT filed a motion to strike all portions of petitioner's brief except for petitioner's argument regarding the "idle time" issue. ODOT argued that, due to the stipulation, petitioner had waived all of its arguments regarding the validity of IFTA, and that the only issue that could properly be argued was the "idle time" issue.

In a March 2002 proposed order, the ALJ concluded that, pursuant to the stipulation, petitioner had waived all of its arguments regarding the validity of IFTA. In addition, the ALJ concluded that IFTA did not preclude taxation for idle time and that the only tax year before him was 1998, not 1999 as petitioner argued. In a July 2002 final order, ODOT adopted the findings and conclusions of the ALJ. In addition, ODOT concluded that, under the language of IFTA, if petitioner wished to pursue a refund for idle time, it had to do so in the individual jurisdiction to which the tax was owed and could not file a refund request in Oregon. Petitioner sought judicial review of that final order.

While that petition was pending, petitioner requested a refund for idle time for the tax year 1999. ODOT denied petitioner's request, and petitioner requested a hearing, held in December 2002, which became ODOT Case No. 99706. Petitioner raised the same arguments as before regarding idle time and the validity of IFTA. In a proposed order, the ALJ again rejected petitioner's argument regarding idle time, and, this time, addressed and rejected on the merits petitioner's claims regarding IFTA's validity. In a June 2003 final order, ODOT rejected petitioner's claims and adopted the findings and conclusions of the proposed order. Petitioner sought judicial review. In July 2003, petitioner filed a motion to consolidate the petitions. We granted petitioner's motion. We address the two final orders issued by ODOT separately, beginning with the June 2003 final order.

## II. JUNE 2003 FINAL ORDER

We begin with petitioner's contentions concerning the validity of IFTA. In its third assignment of error, petitioner argues first that "the Oregon Legislature failed to properly adopt IFTA and delegate its administration to ODOT pursuant to ORS 825.555 which only references a generic international fuel tax agreement, not IFTA." Second, petitioner argues that, even if the legislature properly delegated to ODOT the authority to enter into IFTA, ODOT failed to properly adopt both the 1993 version of IFTA and the 1996 amendments to IFTA. Third, petitioner argues that IFTA's adoption was subject to the rulemaking procedures of the

Administrative Procedures Act (APA) and that ODOT failed to follow those procedures.

In response, ODOT asserts, respectively, that ORS 825.555 authorized ODOT to enter into IFTA, that petitioner has failed to present any evidence that ODOT failed to follow proper procedures, and that ODOT, by promulgation of OAR 740-200-040, adopted by rule the 1996 amendments to IFTA. We agree with ODOT.

A. *Delegation*

■ We first examine whether ORS 825.555 authorized ODOT to enter into IFTA. Our review is for errors of law. ORS 825.555 provides, in part:

"(1) The Department of Transportation may enter into an international fuel tax agreement with jurisdictions outside of this state to provide for cooperation and assistance among member jurisdictions in the administration and collection of taxes imposed on motor carriers for the consumption of all fuels used in vehicles operated interstate.

"\* \* \* \* \*

"(3) An agreement *may not provide* for any benefit, exemption or privilege with respect to any fees or taxes levied or assessed against the use of highways or use or ownership of vehicles except for motor fuel taxes and requirements related to motor fuel taxes."

(Emphasis added.)

Petitioner asserts that ORS 825.555 is an invalid delegation of power by the legislature because it did not adopt the *specific* international fuel tax agreement that ODOT entered into and because the statute adopts future tax agreements. Before this court, petitioner cites no authority in support of its assertion. Petitioner's brief to ODOT cited *Demers v. Peterson*, 197 Or 466, 254 P2d 213 (1953), and *Brinkley v. Motor Vehicles Division*, 47 Or App 25, 613 P2d

1071 (1980). We discuss those cases in turn and reject petitioner's contentions.

*Demers* involved the constitutionality of the Oregon Agricultural Chemical Control Act. 197 Or at 468. That act stated that " '[t]he department may, after public hearing, make regulations for carrying out the provisions of this Act.' " *Id.* at 469. The Supreme Court held that the statute gave the department "unlimited power to make regulations to carry out the provisions of the act[.] * * * There is no suggestion in the title of the act or in the act itself of the nature, extent or character of the regulations." *Id.* at 470. The court held the act unconstitutional because "the act contains no rule or standard fixed for the guidance of the administrative [agency]." *Id.*

■ In contrast to the statute at issue in *Demers,* ORS 825.555(1) specifically provides that ODOT only may enter into an international fuel tax agreement to "provide for cooperation and assistance among member jurisdictions in the administration and collection of [fuel] taxes[.]" In addition, subsection (3) makes it clear that ODOT's authority extends only to fuel taxes, and cannot include unrelated provisions in the agreement. In order to be a proper delegation of power, the statute must "furnish[ ] adequate *safeguards* to those who are affected[.]" *Warren v. Marion County et al,* 222 Or 307, 314, 353 P2d 257 (1960) (emphasis in original). ORS 825.555 provides those safeguards by limiting ODOT's authority to enter into agreements for cooperation and assistance among jurisdictions in the administration and collection of fuel taxes. *Demers* does not support petitioner's argument.

Petitioner cited *Brinkley* below in support of its argument that ORS 825.555 improperly adopts future tax agreements. In *Brinkley,* this court declared unconstitutional a local ordinance that "purported to adopt all state statutory amendments to the definitions of traffic offenses 'which * * * hereafter may be enacted.' " 47 Or App at 27. ORS 825.555 does not suffer from the same defect; it does not purport to adopt anything. It simply gives ODOT the authority to enter into an international fuel tax agreement. Accordingly, *Brinkley* does not support petitioner's argument.

## B. *Procedure*

■ We next address petitioner's argument that ODOT did not follow proper procedures in entering into and adopting IFTA as provided in ORS 825.555. As previously noted, ODOT first became a member of IFTA in 1993, when it passed a resolution adopting IFTA. Petitioner's argument essentially boils down to its contention that there is an *absence* of any record of what, if any, procedure ODOT followed in adopting IFTA.[4] However, petitioner overlooks that it has "the burden of presenting evidence to support [its] position in a contested case * * *." ORS 183.450(2).[5] It was petitioner's obligation to make sure that there is evidence in the record supporting its position. *See, e.g., Lis v. Bd. of Higher Ed.*, 34 Or App 215, 218-19, 577 P2d 1370 (1978) (rejecting "no evidence in the record" argument with respect to the plaintiff's claim that the agency did not follow proper procedure). Petitioner did not meet that obligation.[6] For that

---

[4] The only procedural requirement under ORS 825.555 is provided in subsection (5). That subsection provides that "[a]n agreement shall be in writing and shall be filed with the department within 10 days * * *." Petitioner specifically argues that there is no evidence in the record that the agreement was subjected to Attorney General review under ORS 190.430(1) or that IFTA was reduced to writing and filed with the department under ORS 825.555(5). Petitioner also asserts that, on its face, IFTA does not meet other requirements set forth in ORS 190.420(3). ORS 190.420 is a general statute governing the authority of public agencies to make interstate agreements. Although we question whether ORS 190.420 is even applicable due to the specific authority given to ODOT to enter into an international fuel tax agreement under ORS 825.555, *see Lewis v. CIGNA Ins. Co.*, 339 Or 342, 350-51, 121 P3d 1128 (2005) (specific statute controls over general statute), we need not decide that matter because IFTA satisfies the requirements listed under ORS 190.420(3).

ORS 190.420(3) requires an interstate agreement to

"specify its duration, the organization, composition and nature of any separate legal or administrative entity created to exercise the functions agreed upon, the purpose of the agreement, the method of financing the joint or cooperative undertaking, the methods to be employed to terminate the agreement, and any other necessary and proper matters."

Petitioner fails to specify which particular criteria IFTA fails to satisfy. A simple glance at the IFTA Table of Contents reveals provisions for the International Fuel Tax Association, Inc. (the administrative entity), the purpose, fees, and membership (including cancellation).

[5] ORS 183.450(2) provides, in part:

"The burden of presenting evidence to support a fact or position in a contested case rests on the proponent of the fact or position."

[6] In any event, ORS 825.555 is subject to ORS 823.013, which provides, in part:

reason, we reject petitioner's argument that ODOT did not properly adopt and become a member of IFTA.

## C. *Rulemaking*

■ We next address petitioner's argument that IFTA's provisions are rules that should have been promulgated in accordance with the APA. ODOT responds that IFTA's provisions are not rules, but are simply part of the agreement entered into, and that, even if IFTA is subject to the requirements of the APA, ODOT promulgated OAR 740-200-040, which adopted IFTA.

In its final order, ODOT rejected petitioner's challenge based on the adoption of OAR 740-200-040. That rule provides, in part:

"(1) The provisions contained in the **International Fuel Tax Agreement (IFTA) Articles of Agreement,** the **IFTA Audit Manual** and the **IFTA Procedures Manual**, and all amendments thereto in effect April 1, 2002, are hereby adopted and prescribed by the Oregon Department of Transportation (ODOT) and apply to Oregon-based motor carriers who participate in IFTA."

(Boldface in original.) Petitioner does not dispute that, by the adoption of OAR 740-200-040, ODOT promulgated IFTA's provisions in accordance with the APA. That rule went into effect on November 18, 2002, *before* the hearing date in this case.[7] Therefore, the question becomes whether ODOT intended OAR 740-200-040 to be applied retroactively; that is, does the rule, adopted in 2002, apply to fuels consumed in 1999?

■■ An agency is allowed to apply a rule retroactively if that is the agency's intent. *U.S. Bancorp v. Dept. of Rev.*, 337

---

"(1) A substantial compliance with the requirements of the laws administered by the Department of Transportation regarding motor carriers and railroads is sufficient to give effect to all the rules, orders, acts and regulations of the department and they *shall not be declared inoperative, illegal or void for any omission of a technical nature in respect thereto.*"

(Emphasis added.) Petitioner's argument would seem to fall within the ambit of that statute, and there is evidence in the record that ODOT passed and filed a resolution adopting IFTA in 1993.

[7] In the Notice of Hearing, the hearing date was scheduled as December 16, 2002. However, the hearing was not actually held until May 1, 2003.

Or 625, 637, 103 P3d 85 (2004). In order to ascertain ODOT's intent in promulgating OAR 740-200-040, we first examine the text and context of that rule. *Id.* The rule itself is silent as to whether ODOT intended it to apply retroactively. However, an examination of the circumstances surrounding the promulgation of OAR 740-200-040 shows that it was intended to be applied retroactively. *Id.*

Our analysis is informed by *Delehant v. Board on Police Standards*, 317 Or 273, 855 P2d 1088 (1993). In that case, the petitioner appealed the Board on Police Standards and Training's (BPST) denial of a police certificate due to his criminal history. The petitioner had been convicted of several misdemeanors in Idaho. Those convictions were eventually set aside and dismissed, and the records of those convictions were expunged by an Idaho court. *Id.* at 275-76. However, based on those convictions, BPST denied the petitioner's application for certification. After a contested case hearing, BPST again denied the petitioner's certification. In the Amended Final Order, BPST cited ORS 181.662(1)(b), which grants BPST authority to deny certification if " 'the officer * * * has been convicted of a crime in this state or any other jurisdiction.' " *Id.* at 276. BPST made no reference to its own rule, *former* OAR 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(a)(1) (1989), which was in effect at the start of the petitioner's hearing and provided that BPST may only deny certification " 'based upon a finding that the officer * * * had been convicted of a crime designated in any statute of this state as a felony or a crime for which a maximum term of imprisonment of more than one year may be imposed.' " *Id.* During the pendency of the petitioner's contested case, BPST adopted *former* OAR 259-08-070 (2001), which mirrored the language of ORS 181.662(1)(b), giving BPST the authority to deny certification if the petitioner " 'has been convicted of a crime in this state or any other jurisdiction.' " *Id.* at 277. Although no reference to the new rule was made in the Amended Final Order, BPST withdrew that order and issued a Second Amended Final Order that made express reference to that rule. *Id.*

The Supreme Court held that *former* OAR 259-08-070 (2001) was intended to be applied retroactively. *Id.* at 278. Although the rule itself was silent on the issue, the court

reasoned that, because BPST had "promulgated the rule during the progress of th[e] case, then applied the rule to th[e] case * * * [it] unquestionably intended the rule to apply retroactively."

That same reasoning applies in this contested case. In ODOT Case No. 99044, ODOT ruled that petitioner had waived through stipulation any arguments concerning the validity of IFTA. OAR 740-200-040 was then promulgated, and ODOT subsequently applied it to the same challenge to the validity of IFTA in the contested case at hand. As in *Delehant*, ODOT's passage and application of OAR 740-200-040 during the pendency of this contested case establishes ODOT's intent to apply the rule retroactively.

■ Having determined that ODOT intended the rule to be applied retroactively, we still must determine whether that application "prejudicially affected petitioner's rights." *Guerrero v. AFSD*, 67 Or App 119, 123, 676 P2d 928 (1984). We conclude that there has been no showing of prejudice. The purpose of IFTA is to ease the administrative burden that fuel taxation laws exert on states and motor carriers. IFTA, Article I, R130-R150. IFTA only benefits petitioner and does not change any of petitioner's substantive obligations to pay fuel taxes. Petitioner admitted as much in its reply brief:

> "As a practical matter, if ODOT refunded to May Trucking Company all fuel taxes paid on the grounds that ODOT did not have the authority to collect the taxes, May Trucking Company would still have to pay the over-the-road fuel taxes to the individual jurisdictions in which it operates. *It would serve no useful purpose* for May Trucking Company to challenge ODOT's authority to collect all fuel taxes. If this court holds that IFTA was not lawfully adopted or is an illegal compact, then Oregon-based carriers such as May Trucking Company *will still have to pay fuel taxes to the jurisdictions in which they operate.*"[8]

(Emphasis added.) There is no prejudice to petitioner in the retroactive application of OAR 740-200-040. Therefore, regardless of whether ODOT was *required* to adopt the terms

---

[8] It strikes us as odd that petitioner would argue that it would serve no useful purpose to challenge ODOT's authority to collect *all* fuel taxes, but then argue that it is doing just that.

of IFTA by rule, ODOT did so and that rule applies in this case. Accordingly, petitioner's argument fails.

## D. *Compact Clause*

■ In petitioner's fourth assignment of error, he asserts that IFTA violates the Compact Clause of the United States Constitution because it involves a foreign power, Canada, and because Congress never consented to IFTA. ODOT replies that this issue is controlled by *US Steel Corp. v. Multi-State Tax Comm'n*, 434 US 452, 54 L Ed 2d 682, 98 S Ct 799 (1978), and that, in any event, Congress has consented to IFTA. We agree with ODOT.

The Compact Clause provides, "No state shall, without the Consent of Congress, * * * enter into any Agreement or Compact with another State, or with a foreign Power * * *." US Const, Art I, § 10, cl 3. Congress has consented to IFTA. 49 USC § 31705.[9] IFTA, therefore, satisfies the Compact Clause. Accordingly, we reject petitioner's argument.[10]

---

[9] That statute provides, in part:

"(a) REPORTING REQUIREMENTS.—After September 30, 1996, a State may establish, maintain, or enforce a law or regulation that has a fuel use tax reporting requirement (including any tax reporting form) only if the requirement conforms with the International Fuel Tax Agreement.

"(b) PAYMENT.—After September 30, 1996, a State may establish, maintain, or enforce a law or regulation that provides for the payment of a fuel use tax only if the law or regulation conforms with the International Fuel Tax Agreement as it applies to collection of a fuel use tax by a single base State and proportional sharing of fuel use taxes charged among the States where a commercial motor vehicle is operated."

[10] In *US Steel Corp.*, the Supreme Court considered a Compact Clause challenge to The Multistate Tax Compact. The Court applied a narrow reading of the Compact Clause, holding that, unless an interstate agreement or compact "enhance[s] state power to the detriment of federal supremacy," it does not violate the Compact Clause. 434 US at 460. Based on that standard, the Court went on to reject the petitioner's argument:

"This pact does not purport to authorize the member States to exercise any powers they could not exercise in its absence. Nor is there any delegation of sovereign power to the Commission; each State retains complete freedom to adopt or reject the rules and regulations of the Commission. Moreover, as noted above, each State is free to withdraw at any time."

434 US at 473. In addition, the Court rejected the petitioner's argument that the compact encroached upon the United States' power to regulate foreign relations because it provided for taxation of foreign corporations. *Id.* at 476-77.

Even without the consent of Congress, *US Steel* is exactly on point. IFTA does not threaten federal supremacy; states are authorized to impose fuel taxes with or without IFTA. No states are required to join IFTA and states can withdraw at any

E. *"Idle Time"*

██ We next turn to petitioner's first assignment of error
with respect to the June 2003 final order. Petitioner argues
that IFTA does not authorize the taxation of fuel consumed
while its vehicles are idling. IFTA, Article VIII, R800 (1996),
provides that "[t]he *consumption of motor fuels used in the
propulsion of qualified motor vehicles*, except fuel consumed
that is exempt from taxation by a jurisdiction, is the taxable
event under this Agreement."[11] (Emphasis added.)

██ Petitioner contends that, because its trucks are not
being "propelled" when they are idling, fuel consumed during
idle time is not subject to taxation. Petitioner's argument is
based on the plain, ordinary meaning of "propulsion." ODOT
primarily relies on authority from other states rejecting peti-
tioner's argument. In addition, ODOT argues that, when
read with other provisions of IFTA, petitioner's reading of
R800 is implausible. We review ODOT's reading of R800 for
errors of law. ORS 183.482(8)(a).

As explained before, ODOT has adopted IFTA by
administrative rule, including the Audit Manual and the
Procedures Manual. OAR 740-200-040. The principles of
deference to an agency's interpretation of its own rules
apply in this case. After all, this is not a situation in which
ODOT adopted by rule an agreement made by another
agency; ODOT is the agency vested with the authority to
negotiate the terms of and enter into IFTA. *See, e.g., Oregon
Restaurant Services v. Oregon State Lottery*, 199 Or App 545,
560, 112 P3d 398 (2005) (contract with administrative agency
incorporating that agency's rule by reference entitled to def-
erence). Thus, as long as ODOT's interpretation "cannot be
shown either to be inconsistent with the wording of the rule
itself, or with the rule's context, or with any other source of
law, there is no basis on which this court can assert that the
rule has been interpreted 'erroneously.' " *Don't Waste Oregon*

time. Although Canada is a party to the compact, petitioner does not argue, or
make any showing that, without IFTA, states would not have the power to impose
a fuel tax on trucks that operate out of Canada.

[11] Effective July 1, 2003, R800 was amended to provide taxes for "the *consump-
tion* of motor fuel in qualified motor vehicles." (Emphasis added.) The amendments
are not at issue in this judicial review, therefore, all references in this discussion
are to the 1996 version of IFTA.

*Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994). For the reasons that follow, we hold that ODOT's interpretation of IFTA is consistent with the text and context of the agreement.

ODOT's interpretation is a plausible reading of the text and context. R800 refers to the *"consumption* of motor fuels." (Emphasis added.) The term "motor fuel" has a specific definition, and is defined as "all fuels *used for the generation of power for propulsion* of qualified motor vehicles." IFTA, Article II, R239.[12] Thus, the language in R800 regarding "propulsion" is simply a restatement of the definition of motor fuels.

In addition, IFTA Article VIII, R820, provides:

> "All motor fuel acquired that is normally subject to consumption tax is taxable unless proof to the contrary is provided by the licensee. The licensee *must report all fuel placed in the supply tank* of a qualified motor vehicle as taxable on the IFTA tax return."

(Emphasis added.)

In addition, ODOT's interpretation is consistent with ORS 825.555. ORS 825.555(1) authorizes ODOT to enter into an agreement for the "administration and collection of taxes imposed on motor carriers *for the consumption of all fuels* used in vehicles operated interstate." (Emphasis added.) ODOT's interpretation accomplishes just that.

ODOT's interpretation is further supported by reasoning in the Indiana Tax Court's decision in *Hi-Way Dispatch*. In that case, the court rejected a similar challenge to IFTA. The court stated, "The phrase ['used in the propulsion'] explains the general use for which fuel must be consumed under IFTA, not the fuel's specific use at any given

---

[12] Effective July 1, 2003, R239 was amended to define "motor fuels" as "all fuels placed in the supply tank of qualified motor vehicles."

[13] Wisconsin and Utah have also rejected "idle time" challenges to IFTA. *See US Xpress, Inc. v. Utah State Tax Comm'n*, 886 P2d 1115 (Utah App 1994); *Roehl Transport v. Div. of Hearings & Appeals*, 570 NW2d 864 (Wis App 1997). However, those cases do not assist our analysis because they turned on state statutes that defined the taxable event as motor fuels used in the "operation" of qualified motor vehicles.

time." *Id*. at 597.[13] Accordingly, because ODOT's interpretation of R800 is consistent with the text and context of the provision itself, we defer to that interpretation.[14]

## III. JULY 2002 FINAL ORDER

### A. *The Scope of the Stipulation*

 The first issue we must resolve is whether the stipulation entered into by the parties precludes petitioner from challenging the validity of IFTA in this contested case proceeding. Petitioner contends that, because it raised those issues throughout the prior contested case, it had not waived them. Petitioner also argues that it stipulated to the "idling issue" because the ALJ had ruled against it on its challenges to IFTA's validity in the ALJ's proposed order from Case No. 86504, so it did not expect the ALJ to rule again on those issues. ODOT contends that, due to the stipulation, the only reviewable issue in this contested case is the idling issue. We agree with ODOT.

 We treat the stipulation between the parties as we would any other agreement. In interpreting an agreement, we must first determine whether the language is ambiguous by examining the text and context of the document as a whole. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). The issue of ambiguity is a question of law. *Id.* If the language is unambiguous, the analysis ends. Here, we need not go any further than the unambiguous text of the stipulation.

The stipulation states, "Petitioner agrees not to seek a refund for IFTA Fuel Taxes for the audit period, *except for a refund for fuel consumed while a truck is idling ('idle time' issue)*, which petitioner intends to pursue for the year 1998." (Emphasis added.) In Case No. 86504, six distinct issues were argued and briefed: (1) whether petitioner accurately reported its fuel use during the audit period; (2) whether the authority delegated to ODOT to enter into IFTA was proper;

---

[14] Because we conclude that IFTA does not preclude taxation for "idle time," we need not discuss petitioner's second assignment of error, whether petitioner must seek a refund for "idle time" from Oregon, the base jurisdiction, or from each individual jurisdiction.

(3) whether ODOT was required to pass the substance of IFTA as rules; (4) whether ODOT failed to provide notice and comment; (5) whether IFTA violates the Compact Clause; and (6) whether IFTA entitles petitioner to a refund for idling time.

The stipulation does not say *except for* the delegation issue, the rulemaking issue, or the Compact Clause issue. The stipulation mentions only one distinct issue unrelated to any of the other issues. In fact, petitioner's attack on the validity of IFTA would require a refund of the *entire* tax, not just taxes paid for "idle time," for if IFTA were not a legal compact, ODOT would have no authority to collect *any* taxes. That result is inconsistent with the plain text of the agreement. We conclude that petitioner, by stipulation, waived all arguments regarding the validity of IFTA in this contested case. Accordingly, the sole issue here is the "idle time" issue.

B. *"Idle Time" Issue*

For the reasons explained in our discussion of the June 2003 Final Order, IFTA does not exempt "idle time" from taxation. Petitioner, therefore, is not entitled to a refund for "idle time."

## IV. CONCLUSION

In sum, as to the June 2003 Final Order, petitioner's arguments regarding the validity of IFTA fail. ORS 825.555 is not an improper delegation of power by the legislature, petitioner failed to prove that ODOT did not follow the proper procedures in adopting IFTA, ODOT adopted IFTA by rule, and IFTA does not exempt "idle time" from taxation. As to the July 2002 Final Order, petitioner waived its arguments regarding the validity of IFTA through stipulation and, on the "idle time" issue, the same interpretation of the language of IFTA applies. Accordingly, ODOT did not err in rejecting petitioner's arguments on those issues.

Affirmed.