Argued and submitted January 18, reversed and remanded May 31, 2006

STATE OF OREGON,
acting by and through
the Department of Human Services,
*Appellant,*

*v.*

Jack WILLINGHAM,
*Respondent.*

0308-08747; A126258

136 P3d 66

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

William T. Powers argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Linder and Wollheim, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

The state appeals from a grant of summary judgment under ORCP 47 to defendant on the state's claim to recover medical assistance paid to defendant's father during his lifetime. ORS 414.105. We reverse.

The facts relevant to this appeal are not in dispute. In 1993, Jack Willingham transferred certain real property to his son, defendant, reserving a life estate. In 1997, he applied for medical assistance from the state, which he received until his death in 2002. Thereafter, the state, on behalf of the Department of Human Services (DHS), filed a complaint against defendant for recovery of the medical assistance paid to the decedent under ORS 414.105 and OAR 461-135-0845 and alleged that "[a]s recipient of the Property, defendant is liable to plaintiff to the extent of Decedent's interest in the Property." In response, defendant filed an answer denying that the property that he received from his father was subject to the state's claim. Eventually, the trial court ruled that the property was not subject to ORS 414.105 because the legislature did not intend the statute to apply to life estates created before the effective date of the 1995 amendment to the statute and granted summary judgment to defendant.

■ On appeal, the state argues that the amendment of ORS 414.105 in 1995 abrogated the common-law rule that a life estate is extinguished at the moment of death for purposes of recovering medical assistance payments from the estate of a recipient. Because all of the assistance was paid to defendant's father after the statute was amended, the state contends that it is entitled to apply the statute prospectively to recover the amounts that it paid to defendant's father from the value of his life estate as it existed at the moment before his death. It posits that the fact "that defendant may receive less upon [his father's] death than anticipated is a function of the value of the life estate, not a result of inclusion of the remainder interest in the estate."

Defendant disagrees that the state seeks to apply ORS 414.105 prospectively. He reasons that because he acquired his remainder interest in 1993, before the statute

was amended, any application of the statute to the property is retroactive in nature, something that the legislature did not intend. Alternatively, if the statute does reach the property, then, according to defendant, such an application would constitute an unconstitutional retroactive impairment of the contract that he had with his father to receive the remainder interest and an unconstitutional taking of it. Under all of those circumstances, he concludes that the legislature could not have intended that ORS 414.105 be applied to the property that he now owns.

■ In light of the parties' arguments, we turn to the language of the governing statute as it existed after 1995 and between 1997 and 2002 when the state made payments to defendant's father.[1] ORS 414.105 provides:

"(1) The Department of Human Services may recover from any person the amounts of medical assistance incorrectly paid on behalf of such person.

"(2) Medical assistance pursuant to this chapter paid on behalf of an individual who was 55 years of age or older when the individual received such assistance * * * may be recovered from the estate of the individual or from any recipient of property or other assets held by the individual at the time of death including the estate of the surviving spouse. Claim for such medical assistance correctly paid to the individual may be established against the estate, but there shall be no adjustment or recovery thereof until after the death of the surviving spouse, if any, and only at a time when the individual has no surviving child who is under 21 years of age or who is blind or permanently and totally disabled. Transfers of real or personal property by recipients of such aid without adequate consideration are voidable and may be set aside under ORS 411.620(2).

"(3) Nothing in this section authorizes the recovery of the amount of any aid from the estate or surviving spouse of a recipient to the extent that the need for aid resulted from a crime committed against the recipient.

"(4) In any action or proceeding under this section to recover medical assistance paid, it shall be the legal burden

---

[1] The statute was also amended in 2001. Those amendments do not affect the outcome of this case.

of the person who receives the property or other assets from a Medicaid recipient to establish the extent and value of the Medicaid recipient's legal title or interest in the property or assets in accordance with rules established by the department.

"(5) As used in this section, 'estate' includes all real and personal property and other assets in which the deceased individual had any legal title or interest at the time of death including assets conveyed to a survivor, heir or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust or other similar arrangement."

The issue framed by the parties on appeal—whether the statute applies to a life estate created in 1993—presents an issue of statutory interpretation. We ascertain the intention of the legislature underlying a statute by first considering the text and context of the language used in the statute. Part of the context of a statute are prior versions of the statute. *State ex rel Penn v. Norblad*, 323 Or 464, 467, 918 P2d 426 (1996). In amending ORS 414.505 in 1995, the legislature added subsection (5) to the statute. Before that amendment, the state could charge the estate of the surviving spouse even though the decedent's interest had passed at the time of death by right of survivorship. ORS 414.105(2) (1993). However, the 1993 version of the statute made no reference to life estates. Thus, it is apparent that the legislature intended by its 1995 amendment to reach other kinds of property interests under the statute that had not been previously subject to it. Based on that change in the law in 1995, we agree with the state that the legal effect of the legislature's amendment was to modify the common-law rule that a life estate interest is extinguished under the circumstances established by the statute. For purposes of the recovery of medical assistance paid by the state during the lifetime of the holder of a life estate interest, the life estate continues to exist after the death of the person holding the interest.

■ ■ The next question is whether the legislature, by amending the statute in 1995, intended to reach life estates that had been created before that time. Generally, legislation is to be applied prospectively unless it appears that the legislature intended to enact retroactive legislation. *Fromme v.*

*Fred Meyer, Inc.*, 306 Or 558, 561, 761 P2d 515 (1988). A retroactive legislative action is one that affects existing legal rights or obligations arising out of past transactions or occurrences. *U.S. Bancorp v. Dept. of Rev.*, 337 Or 625, 637, 103 P3d 85 (2004) (application of 1995 tax regulation on taxpayer for actions taken in 1988-92 constituted retroactive application of the regulation, since taxpayer was entitled to presume that its tax for those years would be based upon apportionment formula in 1987 regulation); *see also Whipple v. Howser*, 291 Or 475, 488-89, 632 P2d 782 (1981) (Linde, J., concurring) (" 'Retroactivity' itself is a deceptively simple word for a complex set of problems. In real time, all laws can operate only prospectively, prescribing legal consequences after their enactment; they cannot change the past. On the other hand, all new laws operate upon a state of affairs formed to some extent by past events.").

As in many cases, it is not particularly helpful to the analysis in this case to label the 1995 amendment as "retroactive" or "prospective" in application. Indeed, the 1995 amendment becomes "retroactive" in application if the focus of the analysis is on when the life estate is created, but prospective in its application if the focus is on when the state made its payments to the recipient. Rather, we believe the more appropriate analysis is to disregard labels and to discern the legislature's intent regarding whether it intended the statute to apply to life estates that were created before the amendment.

■■ "Specifically, we look first to text and context and, in the absence of an express retroactivity clause, we consider such textual cues as verb tense and other grammatical choices that might suggest what the legislature had in mind." *State ex rel Juv. Dept. v. Nicholls*, 192 Or App 604, 609, 87 P3d 680 (2004). We also inquire whether the legislature included any express retroactive application provisions elsewhere in the same bill, because the failure to include such a provision in one part of a bill but not another may be an indicator of what it intended. Here, there are no express provisions in the bill that amended ORS 414.105 in 1995 that inform the question of whether the amendment applied to 1993 transactions. However, the 1995 amendment included another change to the statute that does suggest an answer to

whether the legislature intended the statute to apply to life estates that were created before the amendment.

Before the 1995 amendment, subsection (2) of the statute provided, in part:

> "Medical assistance pursuant to ORS 411.405 and this chapter paid on behalf of an individual who was 65 years of age or older when the individual received such assistance may be recovered from the estate, or if there be no estate the estate of the surviving spouse, if any, shall be charged for such aid paid to either or both."

The 1995 amendment changed subsection (2) of the statute to provide:

> "Medical assistance pursuant to ORS 411.405 and this chapter paid on behalf of an individual who was 55 years of age or older when the individual received such assistance may be recovered from the estate of the individual or from any recipient of property or other assets held by the individual at the time of death including the estate of the surviving spouse."

In promulgating the 1995 amendment, the legislature included within the scope of the statute additional property interests—life estates—that had not been included before, and it lowered the age of the recipients of payments of medical assistance affected by the statute from age 65 to age 55. At the same time, the statute, as amended, continued to focus on when the assistance payments were received rather than when the property interests made subject to the statute were created. That focus, together with the changes made as a result of the 1995 amendment, suggest that all life estates were intended to be subject to ORS 414.105 in the event that their owners received assistance payments, regardless of when they were created.

If the text and context of a statute are inconclusive regarding a question of legislative intent, as they are here, we next consider the legislature history underlying the statute. Our review of legislative history of the 1995 amendment does not reveal that the legislature expressly discussed at that time whether life estates created before the adoption of the amendment would be subject to the statute. Rather, the legislature added the word "life estate" and changed the age

from 65 years to 55 years to make the statute consistent with federal law, as required by federal law in order to receive federal funding. *See* 42 USC § 1396(a)(18) and 42 USC § 1396p(4)(B). Anita Leach, assistant administrator for the Senior and Disabled Services Division of what is now DHS offered the primary testimony regarding the proposed bill that eventually became the 1995 amendment to ORS 414.105. She testified:

"House Bill 2067 changes the Estate Recovery Law by which persons who receive financial assistance through federal Medicaid funding repay a part of that assistance from their estates. The change lowers the age at which the state can begin counting the amount to be collected from 65 to 55 years.

"The reason for the change is a modification in federal law. In 1993 Congress made changes to the federal Medicaid Estate Recovery Law lowering the age to 55 years. Although this law took effect in October 1993, we have had permission from the federal Department of Health and Human Services to delay implementation until our state law is changed.

"The estate collection process works as follows: When a person dies after receiving financial assistance for medical or long term care services—those services Oregon finances with Medicaid funds—the State of Oregon files a claim against their estate. This claim must wait until the death of a surviving spouse or a disabled child. Currently we can collect for services provided to persons 65 years of age or older. The law change—consistent with the federal ruling—would allow recovery of costs of services provided for persons 55 years of age or older. Collections will be small initially because persons who seek or who are receiving assistance must be notified of our intent to file a claim against their estates. *Collections will not be made on the portion of services paid prior to the notice.*"

Testimony, House Committee on Human Resources and Education, Subcommittee on Human Resources, HB 2067, Mar 13, 1995, Ex J (statement of Anita Leach, Assistant Administrator, Senior and Disabled Services Division) (emphasis supplied).

Although the above legislative history does not expressly address whether the 1995 amendment was intended to apply to the creation of life estates before its enactment, the implications from the above testimony inform that issue. The testimony demonstrates that, to the extent the legislature was concerned with the temporal scope of the provision, that concern related to when financial assistance was provided and not to when a life estate or other property interest governed by the statute was created. In light of that testimony, the fact that the statute and the legislative history underlying it make no distinction as to when the property interests are created is persuasive evidence that the legislature intended ORS 414.105, as amended, to apply to all life estates.

■■ In addition, defendant argues that, because DHS's rule, OAR 461-135-0845, valued the decedent's life estate as zero until the 2000 amendment, it is inapplicable to the benefits paid to his father before February 2000. Effective August 28, 1996, OAR 461-135-0845 provided, in part:

> "(1) Effective July 18, 1995, a Life Estate or other Interest in Real or Personal Property or an Asset measured by or valued with respect to a life span (other than the life span of the relevant recipient of state assistance) shall be presumptively established by reference to the tables as set forth at 26 CFR 20.2031-7 in the Code of Federal Regulations and in effect on June 1, 1996, and shall be valued as of the Time of Death of the recipient of state assistance irrespective of actual life span of the measuring life. The value of a Life Estate owned by the relevant recipient of state assistance and measured by such recipient's life span shall be zero at the Time of Death of the recipient."

The current version of the rule, as amended effective February 1, 2000, and in effect at the time of decedent's death, provides:

> "(1) Effective July 18, 1995, the value of an expressly created life estate or other interest in real or personal property or other asset measured by or valued with respect to a life span, including that of the relevant recipient of public assistance, is established by reference to the life estate valuation tables set forth in this rule and is valued as of the

time of death of the recipient of public assistance irrespective of the actual life span of the measuring life."

An agency is permitted to apply a rule retroactively if that is the agency's intent in enacting the rule. *May Trucking Co. v. Dept. of Transportation*, 203 Or App 564, 573, 126 P3d 695 (2006). In order to ascertain the agency's intent in promulgating the rule, we first examine the text and context of the rule in question. *Id.* at 574. Here, the rule expressly states that it is "[e]ffective July 18, 1995." Based on the express language of the current version of rule, there is no question that plaintiff intends the current rule to be enforced in a retroactive manner.

■ Finally, defendant argues that our interpretation of the statute and the rule will result in an unconstitutional impairment of defendant's contract rights in violation of Article I, section 21, of the Oregon Constitution and an unlawful taking by the state under the Oregon and federal constitutions.[2] We understand defendant to make an "as applied" constitutional challenge to ORS 414.105 rather than a facial challenge. Defendant argues that when his father irrevocably deeded the remainder interest in the property to him in 1993, he acquired and held a vested interest in the property at that precise moment that the state cannot constitutionally impair. To the extent that defendant made those arguments in the trial court, the trial court did not rule on them. Rather, it held that defendant was entitled to judgment "as a matter of law for the relief sought in the First Affirmative Defense[.]" That allegation alleges, in part, "Because this legislature did not evince an intent that ORS 414.105 be retroactive, this change should not apply to life estates transferred before that date[.]" Indeed, one of defendant's affirmative defenses that was not ruled on by the trial court challenges the state's evaluation of the value of the decedent's life estate based on his projected life span and the state of his physical health.

---

[2] Article I, section 21, of the Oregon Constitution provides, in relevant part: "No * * * law impairing the obligation of contracts shall ever be passed * * *." An impairment of contract occurs under Article I, section 21, of the Oregon Constitution, when, by operation of law, there is an elimination of an obligation under which performance is required. *Eckles v. State of Oregon*, 306 Or 380, 399, 760 P2d 846 (1988), *appeal dismissed*, 490 US 1032, 109 S Ct 1928, 104 L Ed 2d 400 (1989).

Under the circumstances, we decline to review an "as applied" challenge in this appeal from summary judgment when the trial court did not consider or rule on the factual predicates to such a challenge. Whether there is an unlawful "taking" of defendant's property or an elimination of a contractual obligation between defendant and his father will have to await a factual determination in the trial court.[3] For all of the above reasons, the trial court erred in granting summary judgment to defendant.

Reversed and remanded.

---

[3] We hasten to point out that the statute does not purport to apply to defendant's remainder interest. Indeed, as defined in the statute, the "estate" of his father consists only of the life estate that his father retained, not the remainder interest held by defendant. Moreover, the state on appeal appears to agree. In its brief, it states "defendant's remainder interest is not itself being subjected to reimbursement, but rather the reimbursement is based on the value of the life estate calculated immediately before the death of the decedent and included in the estate."